**Michael C. BORDEN, Petitioner,**

v.

**The ADMINISTRATOR OF the FEDERAL AVIATION ADMINISTRATION and The National Transportation Safety Board, Respondents.**

No. 87–2255.

United States Court of Appeals, Eighth Circuit.

Submitted May 12, 1988.

Decided June 13, 1988.

Rehearing Denied July 18, 1988.

Edward R. Collins, San Diego, Cal., for petitioner.

Peter J. Lynch and Joseph A. Conte, Washington, D.C., for respondents.

Before LAY, Chief Judge, and PECK * and HENLEY, Senior Circuit Judges.

PER CURIAM.

Michael C. Borden seeks review of an order by The National Transportation Safety Board (NTSB) suspending his Airman Certificate for a period of twenty days. The administrative law judge found that Borden violated sections of the Federal Aviation Regulations appearing at 14 C.F. R. §§ 91.75(b) & 91.9. Section 91.75(b) provides that, except in an emergency, no person shall operate an aircraft contrary to an air traffic control (ATC) instruction in an area where ATC is exercised. Section 91.9 prohibits operation of an aircraft in a reckless or careless manner endangering life or property. Borden appealed the decision to the full NTSB, which affirmed the administrative law judge's decision.

The alleged violation occurred when Borden taxied his aircraft across a runway at Lambert Field in St. Louis. He had landed on Runway 24, then had left that runway and headed southeast on Taxiway Papa. He came to a stop near a point where Taxiway P was intersected by Taxiways Charlie and Echo. He told the ground controller, whose name is Paul Young, that he wanted to park near the FAA building at the airport. Young instructed Borden to "go straight ahead then make uh after you pass the little intersection there the next left turn and hold short of three zero right [Runway 30 right]." The instruction to "hold short" meant that Borden was not to cross Runway 30. Young had meant for Borden to turn left onto Taxiway Bravo, but Borden thought he was to turn at Taxiway Golf, which intersected Taxiway Papa at a point beyond Taxiway Bravo.[1]

Young noticed that Borden was taxiing rather fast, so he told Borden, "That left turn right there." Borden turned onto Bravo and then proceeded to cross Runway 30. Young then told Borden "you didn't have a clearance to cross that runway." Borden responded, "I thought you said to cross here." Young answered, "No sir I said make the left turn and hold short at that point." Another aircraft was on its takeoff roll on Runway 30. The administrative law judge found that the other aircraft was at least 4,000 feet from Borden's aircraft, a situation the judge characterized as posing, perhaps not an "actual hazard," but "certainly [a] potential hazard."

Borden testified that the reason he crossed the runway was that he interpreted Young's statement "that left turn right there" as an amended clearance superseding Young's previous instructions. He relies upon the FAA Airman's Information Manual, which states, "The guiding principle is that the last ATC clearance has

* The Honorable John W. Peck, United States Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

1. The confusion about whether Borden was to turn on Taxiway Bravo or Taxiway Golf apparently arose from a misunderstanding of what Young meant when he told Borden to turn after passing "that little intersection there." Young apparently was referring to the intersection of Taxiways Papa and Echo. From Young's vantage point, it looked as though Borden had not reached Taxiway Echo. Borden, however, testified that he was stopped at the intersection with Echo and, as a consequence, he interpreted the "little intersection" he was to pass to be the next intersection, i.e., of Papa and Bravo.

precedence over the previous ATC clearance." Federal Aviation Administration, *Airman's Information Manual* ¶ 270(g) at C4–S4–4 (March 1988).

Young testified, and the NTSB and administrative law judge agreed, that Young's statement "that left turn right there" was not an amended clearance, but was "informational," that is, a reminder to turn left onto Taxiway Bravo. The NTSB, in its Opinion and Order upholding the law judge, reasoned that "if controller intended to give respondent clearance to taxi to his destination on the airport, he would have included the remainder of the taxi route (or a specific clearance to taxi 'to' that destination)."

The standard for our review of the Board's factual findings is whether they are supported by substantial evidence on the record as a whole. *Stix v. Bond,* 569 F.2d 1029, 1031 (8th Cir.1978). As to the Board's application of the law, the "construction of a statute or regulation by those charged with administration is not to be overruled except for weighty reasons." *Doe v. Department of Transportation,* 412 F.2d 674, 678 (8th Cir.1969). We see no reason to overturn the determinations of the Board and the administrative law judge in this case. The record clearly demonstrates that Young should have used taxiway designators, *i.e.,* should have specifically identified the taxiway Borden was to turn onto, that Young had the impression Borden was unfamiliar with the airport, and that Young's instructions did cause Borden some confusion. Nonetheless, the confusion was over which taxiway Borden was meant to take; the instruction not to cross the runway was unambiguous.

Borden argues, however, that the statement in controversy was an instruction to take some action, and was therefore a new clearance as opposed to mere "information." The Administrator responds that, in Young's statement, "that left turn right there," the words "left turn" constituted a noun, not a verb, and that without a verb there was no instruction "to turn." Although this puts on a rather fine point, and while we would hope that pilots at busy airports would not have to make instantaneous decisions by consciously analyzing the controller's grammar, the argument is not without merit. The phrase, "that left turn" more easily implies "that is the left turn I meant in the clearance" than "turn left there, disregard the previous clearance, and taxi across the runway to your destination." This is particularly so because, as the Board and administrative law judge noted, an instruction to proceed as Borden did would have contained more complete taxiing instructions.

Moreover, an Aviation Safety Inspector with thirty-five years of professional aviation experience testified at the hearing that the statement "that left turn right there" was merely informational and was not an amended clearance. Borden strenuously objects to the term "informational," contending that it is a "new term" and that pilots should not be required to determine which portions of a controller's statement are "directive" and which are "informational." While we are sympathetic with Borden's desire for clarity and certainty in air traffic control instructions, we decline to substitute our judgment for that of the Board and the FAA. The administrative law judge obviously credited the expert's testimony with respect to the "informational" nature of Young's statement, and we may not reexamine the administrative law judge's credibility determination. *Owens v. NTSB,* 734 F.2d 396, 398 (8th Cir.1984). Although Borden understandably may have been confused, we find nothing unreasonable in the administrative law judge's conclusion that Borden should have sought further clarification as to whether he had clearance to cross the runway.

Borden also claims that, due to the controller's alleged mishandling of the situation, he is entitled to mitigation of the sanction. He relies on Board decisions which hold that when Air Traffic Control contributes to a violation, the sanction should be mitigated. *James C. Clary,* 3 N.T.S.B. 2380 (1980); *David D. Smith,* 3 N.T.S.B. 85 (1977); and *Frank L. Snead,* 2 N.T.S.B. 262 (1973).

The sanction is "peculiarly a matter for administrative competence," and we may not modify it in the absence of an abuse of the Board's discretion. *Fuhrman v. Dow,* 540 F.2d 396, 398 (8th Cir.1976) (quoting *American Power & Light Co. v. SEC,* 329 U.S. 90, 112, 67 S.Ct. 133, 145–46, 91 L.Ed. 103 (1946), *as quoted in Butz v. Glover Livestock Comm'n Co.,* 411 U.S. 182, 185, 93 S.Ct. 1455, 1457–58, 36 L.Ed.2d 142 (1973)). *Clary* and *Snead* are distinguishable in that they both involved a clearly incorrect instruction by the air traffic controller. Here, however, Borden does not contend that Young lacked authority to give the clearance that he gave, merely that he used improper procedures in failing to give the taxiway designators. In *Smith* the controller gave an ambiguous instruction, one which he had given before and which other pilots had misunderstood. In this case, the instruction not to cross the runway was unambiguous, and, as we have observed, was not amended. Consequently, we will not disturb the Board's finding that the sanction should not be mitigated on account of ATC mishandling.

In conclusion, we do not find that all of the blame lies with Borden. The administrative law judge referred to him as a "conscientious pilot" whose breach was inadvertent. It may be true that, but for the controller's failure to use the proper taxiway designators, the problem would not have occurred. Borden, however, cites no authority for his suggested application of a "but for" causal analysis. The lesson to be learned may be simply that, even in the face of confusing or inadequate instructions from the control tower, the pilot must, if he can, assure the public safety by requesting clarification before he proceeds.

Finding no error, we affirm the order of the NTSB.