Charles Andrew **THROCKMORTON,**
Petitioner,

v.

**NATIONAL TRANSPORTATION SAFETY BOARD, James Busey, Administrator Federal Aviation Administration,** Respondents.

No. 91–1184.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 3, 1992.
Decided May 5, 1992.

442

Peter Axelrod, Tucson, Ariz., for petitioner.

Joseph A. Conte, Washington, D.C., for respondents.

Before EDWARDS, SILBERMAN and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Charles Andrew Throckmorton petitions for review of an order of the National Transportation Safety Board (NTSB) suspending Throckmorton's airline transport pilot certificate for ninety days. For the reasons set forth below, we deny the petition.

The essential facts underlying Throckmorton's suspension are undisputed. On December 18, 1986, Throckmorton, an experienced licensed helicopter pilot, requested permission to make a "low pass" in his helicopter over the Colorado Springs, Colorado airport. Air Traffic Control (ATC) cleared him to pass over Runway 17, but instead he passed along a grassy strip between Taxiway Alpha and a civilian ramp, traveling at an altitude of 10–20 feet and a speed of approximately 150 m.p.h.

On October 9, 1987, the Federal Aviation Administration (FAA) issued an order suspending Throckmorton's Airline Transport Pilot Certificate for ninety days, effective October 28, 1987, based on the foregoing facts and on the additional allegation that in making the pass Throckmorton "flew

within close proximity to a Continental Airlines DC–9, an American Airlines B–727, and a Cessna 182 that were operating on the taxiway and ramp." The order charged Throckmorton with violating four Federal Aviation Regulations then in effect: 91.75(a) (requiring compliance with an ATC clearance),[1] 91.65(a) (prohibiting operation of an aircraft "so close to another aircraft as to create a collision hazard"),[2] 91.79(d) (establishing minimum altitudes for aircraft but exempting helicopter operation "if the operation is conducted without hazard to persons or property on the surface")[3] and 91.9[4] (prohibiting operation of aircraft "in a careless or reckless manner so as to endanger the life or property of another").

Throckmorton appealed the suspension to the NTSB and a hearing was held before an administrative law judge (ALJ) on September 7, 1988. At the hearing Throckmorton admitted his flight path deviated from the clearance but alleged it was the "custom and practice" for a helicopter cleared to pass over a runway to fly instead over the grass parallel to the runway in order "to avoid the flow of fixed-wing traffic." Joint Appendix (JA) No. 6 at 13. He also denied passing dangerously close to other aircraft. At the close of the hearing, the ALJ issued an order affirming the FAA's decision regarding the violations but reducing the suspension from ninety to sixty days.

Throckmorton appealed the ALJ's decision to the full NTSB and the FAA cross-appealed the sanction reduction. By opinion and order adopted October 23, 1990, the full NTSB affirmed the ALJ's decision except that it reinstated the FAA's original ninety-day suspension. Throckmorton now challenges the NTSB's order on the following grounds: (1) the findings of violations are not supported by substantial evidence; (2) the ALJ's conduct at the hearing deprived Throckmorton of due process, (3) the regulations at issue are unconstitutionally vague and (4) the NTSB acted improperly when it reinstated the original ninety-day suspension, setting aside the ALJ's thirty-

---

1. Section 91.75(a) provided:
   Compliance with ATC clearances and instructions.
   (a) When an ATC clearance has been obtained, no pilot in command may deviate from that clearance, except in an emergency, unless he obtains an amended clearance. However, except in positive controlled airspace, this paragraph does not prohibit him from cancelling an IFR flight plan if he is operating in VFR weather conditions. If a pilot is uncertain of the meaning of an ATC clearance, he shall immediately request clarification from ATC.
   14 C.F.R. § 91.75(a) (1986) (now 14 C.F.R. § 91.123(a) (1991)).

2. Section 91.65(a) provided:
   Operating near other aircraft.
   (a) No person may operate an aircraft so close to another aircraft as to create a collision hazard.
   14 C.F.R. § 91.65(a) (1986) (now 14 C.F.R. § 91.111(a) (1991)).

3. Section 91.79 provided:
   Minimum safe altitudes; general.
   Except when necessary for takeoff or landing, no person may operate an aircraft below the following altitudes:
   (a) Anywhere.
   An altitude allowing, if a power unit fails, an emergency landing without undue hazard to persons or property on the surface.
   (b) Over congested areas.
   Over any congested area of a city, town, or settlement, or over any open air assembly of persons, an altitude of 1,000 feet above the highest obstacle within a horizontal radius of 2,000 feet of the aircraft.
   (c) Over other than congested areas.
   An altitude of 500 feet above the surface except over open water or sparsely populated areas. In that case, the aircraft may not be operated closer than 500 feet to any person, vessel, vehicle, or structure.
   (d) Helicopters.
   Helicopters may be operated at less than the minimums prescribed in paragraph (b) or (c) of this section if the operation is conducted without hazard to persons or property on the surface. In addition, each person operating a helicopter shall comply with routes or altitudes specifically prescribed for helicopters by the Administrator.
   14 C.F.R. § 91.79 (1986) (now 14 C.F.R. § 91.111(a) (1991)).

4. Section 91.9 provided:
   Careless or reckless operation.
   No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another.
   14 C.F.R. § 91.9 (1986) (now 14 C.F.R. § 91.13 (1991)).

day · reduction. We find none of these grounds meritorious.

■■■ First, Throckmorton asserts the ALJ's decision, upheld by the NTSB, that Throckmorton violated the four regulations is not supported by substantial evidence. In reviewing the NTSB's decision we are bound by section 10(e)(2)(A) of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), which requires that we set aside agency findings unsupported by substantial evidence. *Chritton v. NTSB*, 888 F.2d 854, 856 (D.C.Cir.1989) (citing 49 U.S.C.App. § 1903(d) *and* 5 U.S.C. § 706(2)(E)). "The substantial evidence test is a narrow standard of review" requiring only " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *Refrigerated Transp. Co. v. ICC.*, 616 F.2d 748, 751 (5th Cir. 1980)). Under this standard, our function is to determine only "whether 'the agency ... could fairly and reasonably find the facts as it did.' " *Id.* (quoting *Western Air Lines, Inc. v. CAB*, 495 F.2d 145, 152 (D.C.Cir.1974)). An agency conclusion " 'may be supported by substantial evidence even though a plausible alternative interpretation of the evidence would support a contrary view.' " *Id.* (quoting *Western Air Lines, Inc.*, 495 F.2d at 152). We find the NTSB decision here supported by substantial evidence.

Throckmorton has never disputed that his flight path deviated from the literal terms of his ATC clearance, but has consistently maintained that the deviation was pursuant to "custom and practice" and that it did not bring him within dangerous proximity of the other aircraft. At the hearing witnesses furnished conflicting testimony regarding each of Throckmorton's defenses. Throckmorton and two other witnesses denied that the helicopter approached dangerously close to the other aircraft, while three of the FAA's witnesses testified that it did. The ALJ reasonably resolved this conflict against Throckmorton, concluding that the FAA's witnesses were in better positions to observe the incident and that

Throckmorton and the other two witnesses were not disinterested parties. The ALJ also rejected Throckmorton's testimony that the established custom or practice at the Colorado Springs Airport was for helicopters to pass over grass rather than runways, crediting instead the testimony of the experienced air traffic controller who cleared Throckmorton's pass that he was aware of no such custom. In both cases the NTSB expressly approved the ALJ's reasonable credibility determinations. We cannot reexamine those determinations here or substitute our judgment for that of the ALJ and the NTSB. *See Hill v. NTSB*, 886 F.2d 1275, 1282 (10th Cir.1989); *Borden v. Administrator of FAA*, 849 F.2d 319, 321 (8th Cir.1988); *King v. NTSB*, 766 F.2d 200, 203 (5th Cir.1985); *cf. Chirino v. NTSB*, 849 F.2d 1525, 1529–30 (D.C.Cir. 1988) (upholding NTSB's reversal of ALJ's credibility determination as not arbitrary or capricious). Accordingly, we reject Throckmorton's substantial evidence argument.

■■■ Next, Throckmorton challenges the validity of three of the regulations under which he was charged, alleging that Regulations 91.65(a), 91.79(d) and 91.9 are void for vagueness because they "require[ ] airmen to guess at their meaning."[5] Brief of Petitioner at 19 (citing *Brennan v. Occupational Safety & Health Review Comm'n*, 505 F.2d 869, 872 (10th Cir. 1974)). As we understand Throckmorton's challenge, he contends these three regulations are unconstitutionally vague because each prohibits conduct only to the extent it creates a hazard but provides no guidelines for determining when the conduct is hazardous. We perceive no constitutional vagueness in the regulatory language. In reviewing regulations for vagueness, we must decide only "whether the regulation 'delineated its reach in words of common understanding.' " *Vandehoef v. NTSB*, 850 F.2d 629, 630 (10th Cir.1988) (quoting *Brennan*, 505 F.2d at 872). Further, when considering a vagueness challenge to a "regulation promulgated pursuant to remedial civil legislation ... we must do so 'in

---

**5.** We do not understand Throckmorton's challenge to reach Regulation 91.75(a) which absolutely and unambiguously prohibits deviation from an ATC clearance.

the light of the conduct to which it is applied,'" *Brennan*, 505 F.2d at 872 (quoting *United States v. National Dairy Corp.*, 372 U.S. 29, 36, 83 S.Ct. 594, 599, 9 L.Ed.2d 561 (1963)), allowing "greater leeway" for regulations and statutes governing business activities than those implicating the first amendment, *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972). In such a review, "no more than a reasonable degree of certainty can be demanded" and it is not "unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 340, 72 S.Ct. 329, 331, 96 L.Ed. 367 (1952). Under these standards we conclude the three regulations here are sufficiently clear to put pilots on notice of the kinds of hazardous conduct proscribed. *Cf. Boyce Motor Lines, Inc., supra* (rejecting vagueness challenge to ICC regulation requiring vehicles carrying explosives to "avoid, *so far as practicable*, driving into or through congested thoroughfares, places where crowds are assembled, street car tracks, tunnels, viaducts, and dangerous crossings") (emphasis added); *Vandehoef, supra* (rejecting vagueness challenge to NTSB regulation setting minimum altitude "[e]xcept when necessary for takeoff or landing"); *Brennan, supra* (finding redundant, but not void for vagueness, regulation requiring presence at workplace of person trained in first aid when there is no medical facility "in near proximity"). Accordingly, we reject Throckmorton's vagueness argument.

■ Next, Throckmorton alleges the ALJ deprived him of due process by prejudging his guilt and by improperly admitting expert testimony. Throckmorton first alleges the ALJ's decision was impermissibly based on prejudice because he "ex-

pressed an opinion on the merits of the 91.75(a) issue prior to any testimony and transferred the burden of proof from the Administrator to Respondent Throckmorton." Brief of Petitioner at 9. We find no evidence of prejudice on the ALJ's part. In asserting prejudice, Throckmorton relies primarily on statements the ALJ made at the beginning of the hearing.[6] Noting that Throckmorton's trial brief expressly admitted deviation from the ATC clearance, the ALJ stated he was "ready to rule" on that violation and admonished Throckmorton's counsel: "You better convince me right now. As far as I can see, ATC cleared for pass down the runway and there was not a pass down the runway so why isn't 91.75(a) admitted?" JA No. 6 at 12. Nevertheless, the ALJ properly assured Throckmorton's counsel he would "reserve" his ruling and "listen to the testimony by way of excuse to see if that can be excused." *Id.* at 13–14. The ALJ's statements, taken as a whole, do not "connote[ ] a fixed opinion—'a closed mind on the merits of the case'" so as to disqualify him for prejudice. *United States v. Haldeman*, 559 F.2d 31, 36 (D.C.Cir.1976) (footnote omitted) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966)), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977); *see also Southern Pac. Communications v. American Tel. & Tel. Co.*, 740 F.2d 980, 991 (D.C.Cir.1984) (test for disqualification "may be stated in terms of whether the judge's mind is irrevocably closed on the issues as they arise in the context of the specific case"), *cert. denied*, 470 U.S. 1005, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985); *cf. C & W Fish Co. v. Fox*, 931 F.2d 1556, 1564–65 (D.C.Cir.1991) (agency administrator should be disqualified from rulemaking on account of prejudice only upon a "clear and convincing showing" of an "unalterably closed mind on matters critical to the disposition of the proceeding").

---

**6.** Throckmorton cites as additional evidence of bias that the ALJ *sua sponte* questioned one of the witnesses. We see nothing unusual, however, in a judge's questioning of a witness. *See Roach v. NTSB*, 804 F.2d 1147, 1160 (10th Cir. 1986) ("An ALJ has an obligation to conduct the hearing in an orderly manner and to elicit the truth. He has the right to interrogate witnesses for that purpose."), *cert. denied*, 486 U.S. 1006, 108 S.Ct. 1732, 100 L.Ed.2d 195 (1988); *see also* Fed.R.Evid. 614(b) ("The court may interrogate witnesses, whether called by itself or by a party.").

446

We find Throckmorton's second due process argument even weaker. Throckmorton asserts the ALJ deprived him of due process by admitting testimony by an expert witness whose identity was not disclosed until seven days before the hearing and by two fact witnesses who were not qualified as experts. We agree with the NTSB that Throckmorton has failed to demonstrate how these alleged errors prejudiced his case. We therefore find no due process deprivation arising from them.

Finally, Throckmorton asserts the NTSB improperly reinstated the FAA's initial ninety-day suspension which the ALJ had reduced to sixty days. Throckmorton contends the reinstatement was error because the sixty-day suspension "was consistent with Board precedent which is all that is required." Brief for Petitioner at 36. We find no error in the NTSB's reinstatement of the original sanction. Throckmorton admits that NTSB precedent supports a thirty-day suspension for his low flight violation alone. Taking into account the additional regulatory violations for deviating from ATC clearance and passing hazardously close to other aircraft, we cannot conclude that a ninety-day suspension was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). *Cf. Winslow v. NTSB*, 885 F.2d 615, 618 (9th Cir.1989) (upholding NTSB's reinstatement of FAA ninety-day suspension for low flight, which had been reduced by ALJ to 30-day suspension, concluding that the ninety-day suspension "does not represent a sufficient deviation from NTSB precedent to require the Board to state reasons for its decision or otherwise to justify our interference with the Board's decision").

For the preceding reasons, the petition for review is

*Denied.*