56 F.3d 1531
 312 U.S.App.D.C. 461
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
Timothy J. BROWN, Petitioner,
v.
Joseph M. DEL BALZO, Acting Administrator, Federal Aviation
Administration; National Transportation Safety
Board, Respondents.
 No. 93-1215.
 United States Court of Appeals, District of Columbia Circuit.
 May 31, 1995.
 
 Petition for review of an Order of the National Transportation Safety Board.
 NTSB.
 PETITION DENIED.
 Before: GINSBURG, SENTELLE, and TATEL, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This petition for review was considered on the record from the National Transportation Safety Board and on the briefs filed by the parties. The court has determined that the issues presented occasion no need for a published opinion. See D.C.Cir.Rule 36(b). Upon consideration of the foregoing and the motion for remand, it is
 
 
 2
 ORDERED that the motion for remand be denied for the reasons stated in the memorandum accompanying the judgment. It is
 
 
 3
 ORDERED AND ADJUDGED that the petition for review from the National Transportation Safety Board's order No. EA-3698 served October 27, 1992, be denied for the reasons stated in the accompanying memorandum.
 
 
 4
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 41.
 
 MEMORANDUM
 
 5
 The National Transportation Safety Board's ("NTSB") determination that the July 2, July 5, and July 13, 1987, flights were conducted for compensation or hire was supported by substantial evidence. See Throckmorton v. NTSB, 963 F.2d 441, 444 (D.C.Cir.1992). The following evidence showed that BEA-AMI, for whom Brown served as a pilot/trainee, had been compensated for the July 2 and July 5 flights; thus, the flights came within Part 135 of the Federal Aviation Regulations: (1) the invoice to Northtown Subaru, BEA-AMI's regular customer for Part 135 operations, for the July 2 and July 5 flights; (2) proof of payment of the invoice; and (3) the load manifest coded the flights as passenger charters.
 
 
 6
 Brown failed to meet the burden, which shifted to him after the Administrator showed that the flights came within Part 135, to demonstrate that they were Part 91 flights. See Administrator v. Bowen, NTSB Order No. EA-3351 (1991); Administrator v. Woolsey, NTSB Order No. EA-3391 (1991). His claim that the flights were part of a rental arrangement, or "dry lease," was contradicted by the evidence that the flights were not billed at an hourly rate. Furthermore, "[o]btaining ... both a flight crew and an airplane from the same source (a wet lease) ... [is] conclusive evidence of carriage for compensation or hire," and both Brown and the airplane came from BEA-AMI. Administrator v. Poirier, 5 NTSB 1928, 1930 (1987). Brown's claim that he neither knew, nor could have known, that the July 2 and July 5 flights were conducted for compensation. See Chen v. General Accounting Office, 821 F.2d 732, 738 (D.C.Cir.1987) (ALJ's assessment of witness credibility entitled to "great deference").
 
 
 7
 With respect to the July 13 flight, the NTSB's determination that the flight was conducted for compensation or hire was supported by substantial evidence. The load manifest for that flight, whose accuracy Brown may not challenge for the first time in this appeal, MCI Telecommunications Corp. v. FCC, 842 F.2d 1296, 1302 (D.C.Cir.1988), clearly shows that 2 passengers were carried on two legs of the flight. Moreover, Brown admitted in his August 5, 1987 letter to FAA Inspector Deweese that 2 passengers were carried on the flight. See August 5, 1987 letter, attached to FAA opposition to motion for remand. Brown's contention, based upon the pilot Drew Machamer's alleged assertion, that the Detroit to Buffalo flight leg came within Part 91 is without basis in fact. At the time, Machamer and Brown were conducting a routine BEA-AMI charter flight, transporting Buffalo car dealers to Detroit.
 
 
 8
 While the ALJ may have violated Brown's due process rights and Section 609(a) of the Federal Aviation Act by amending the suspension order, without prior notice and an opportunity to be heard, to include a charge that Brown acted as pilot-in-command ("PIC") on the July 13 flight, these violations were cured by the NTSB's decision to set aside the PIC violation. Therefore, Brown has suffered no injury or prejudice and there appears to be no reason to overturn the NTSB's order, or remand for further proceedings to conduct a hearing on a charge which has been set aside.
 
 
 9
 Finally, with regard to Brown's contention that a 120-day suspension of his pilot's license is too harsh a sanction in light of the ALJ's dismissal of most of the Administrator's charges, we find the sanction to be consistent with NTSB precedent and warranted by the charges sustained against Brown. See, e.g., Administrator v. Platt, NTSB Order No. EA-4012, 1993 NTSB LEXIS 237 (November 3, 1993) ("Typical sanctions for a limited number of unauthorized flights for compensation or hire range from 20-day to 120-day suspensions."); Administrator v. Pingel, NTSB Order No. EA-3265 (1991) (imposing a 120-day suspension for a single round-trip flight found in violation of Part 135).