Edward James CRAWFORD, Petitioner,

v.

Donald D. ENGEN, Administrator,
Federal Aviation Administration,
et al., Respondents.

No. 86–1651.

United States Court of Appeals,
Eighth Circuit.

Submitted April 16, 1987.

Decided June 30, 1987.

Donald E. Heck, Clayton, Mo., for petitioner.

Joseph T. Brennan, of the F.A.A., Kansas City, Mo., for respondents.

Before ARNOLD and WOLLMAN, Circuit Judges, and BOGUE,[*] Senior District Judge.

BOGUE, Senior District Judge.

This action is an appeal from an Opinion and Order of the National Transportation Safety Board (NTSB) which concluded that Petitioner, Edward James Crawford, operated his aircraft in violation of three sections of the Federal Aviation Regulations. This Court has jurisdiction to review the NTSB's Order pursuant to 49 U.S.C. § 1486(d) (Supp.1987).

At all times relevant to this action, Petitioner Crawford was the holder of an Airman Certificate with private pilot privileges. On the morning of August 4, 1984 Petitioner was the pilot in command of an aircraft carrying two passengers to the Columbia Regional Airport in Columbia, Missouri. The flight was conducted under instrument flight rules (IFR). Just prior to 7:00 A.M. when Petitioner was nearing Columbia, the Kansas City air route traffic control center cleared Petitioner to Zodia, a navigational check point for Columbia Airport. Petitioner was then instructed to hold there at an altitude of 4,000 feet because, as Petitioner was advised by Kansas City, the Columbia Airport had one-quarter mile ground visibility and ground fog. At the same time, an Ozark Airlines flight was holding at Zodia at 3,000 feet.

Petitioner then began communicating with Columbia approach control (Columbia Tower) and acknowledged the receipt of his clearance to Zodia at 4,000 feet. Thereafter, Petitioner requested a clearance from Columbia Tower to land at Columbia using visual flight rules (VFR). The transcript of the radio conversation between Petitioner and Columbia Tower reveals per-

* The Hon. Andrew W. Bogue, Senior United States District Judge for the District of South Dakota, sitting by designation.

sistent requests by Petitioner to land VFR and consistent refusals by Columbia Tower. There was also an apparent lack of understanding about Petitioner's location and altitude. Shortly thereafter, Petitioner notified Columbia Tower that he had the runway in sight and only then was he cleared to land. At the time of the landing, the ground visibility was one-quarter mile.

On February 8, 1985, the Administrator of the Federal Aviation Commission issued an Order of Suspension of Petitioner Crawford's Airman Certificate because of Petitioner's alleged violation of three sections of the Federal Aviation Regulations (FAR). The Administrator found that although Petitioner was instructed to hold at Zodia at 4,000 feet, he failed to maintain the assigned route and altitude and instead descended to the Columbia Airport and landed under VFR when the ground visibility was less than three statute miles. The Administrator concluded that Petitioner violated the following three regulations:

91.75(a) *Compliance with ATC clearances and instructions.*

a) When an ATC clearance has been obtained, no pilot in command may deviate from that clearance, except in an emergency, unless he obtains an amended clearance. However, except in positive controlled airspace, this paragraph does not prohibit him from cancelling an IFR flight plan if he is operating in VFR weather conditions. If a pilot is uncertain of the meaning of an ATC clearance, he shall immediately request clarification from ATC.[1]

91.105(d)(1) *Basic VFR weather minimums.*

d) Except as provided in § 91.107, no person may take off or land an aircraft, or enter the traffic pattern of an airport, under VFR, within a control zone—[2]

(1) Unless ground visibility at that airport is at least 3 statute miles;

91.9 *Careless or reckless operation.*

No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another.[3]

On February 22, 1985, Petitioner Crawford appealed the Administrator's order of suspension to the National Transportation Safety Board. At the conclusion of a hearing, the administrative law judge from the NTSB ruled in favor of Petitioner and reversed suspension. The Administrator of the Federal Aviation Administration appealed the initial decision and order of the administrative law judge on July 18, 1985. On April 10, 1986 the National Transportation Safety Board served its Opinion and Order reversing the administrative law judge and affirming the suspension of Petitioner's Airman Certificate. Petitioner Crawford appealed that Order to this Court.

The scope of this Court's review on appeal is defined by 49 U.S.C. § 1486(e). That section provides: "The findings of fact by the Board or Secretary of Transportation, if supported by substantial evidence, shall be conclusive." After review of the Board's factual findings and conclusion that Petitioner Crawford violated the three specified FAR's, this Court concludes that the findings are supported by substantial evidence in the record. Therefore, the Board's Order is affirmed.

*I. Section 91.75(a) violation.*

The Board found that Petitioner violated § 91.75(a) of the Federal Aviation Regulations which prohibits a pilot from deviating from a routing or altitude clearance unless he obtains an amended clearance or there is an emergency. The Board first found that Petitioner deviated from his assigned clearance of 4,000 feet to Zodia when he acknowledged at 7:02:29 that he was not at 4,000 feet.[4]

The Board therefore reversed the administrative law judge's finding that Mr. Crawford remained at 4,000 feet until he was

---

1.  14 CFR § 91.75(a) (1987).

2.  14 CFR § 91.105(d)(1) (1987).

3.  14 CFR § 91.9 (1987).

4.  The record reveals that Petitioner acknowledged his altitude change at 7:02:31.

cleared for landing and this Court concludes that such finding is supported by substantial evidence, including Mr. Crawford's testimony, the transcript of his radio communication with Kansas City and Columbia Tower and the Columbia air traffic controller's testimony. To the extent that the Board failed to adopt the administrative law judge's credibility determinations in several respects, this Court concludes such action is justified and is supported by substantial evidence in the record.

The Board. also found that Petitioner Crawford did· not cancel his IFR flight plan. The Board noted that the IFR flight plan would have been automatically cancelled if Petitioner had received further clearance from air traffic control. However, because no such clearance was given,[5] the Board, like the administrative law judge, reviewed the evidence and decided whether or not the Petitioner's words and actions could be considered an effective cancellation of his IFR flight plan. The Board concluded that Petitioner Crawford knew he needed a clearance and did not have one. There is much uncontroverted evidence concerning Crawford's requests for VFR and special VFR clearances. Whether or not such requests should be interpreted as a sufficiently clear IFR cancellation depends upon the interpretation given them. In this instance, there is substantial evidence supporting the Board's conclusion that Crawford's attempts to get other clearance did not effectively cancel his IFR flight plan.

## II. Section 91.105(d)(1) violation.

The Board also found that Petitioner Crawford landed his aircraft in violation of Federal Aviation Regulation Section 91.-105(d)(1) because he landed under VFR while ground visibility was less than three statute miles. The Board based its conclusion upon the evidence of ground visibility in the record, including the certified copy of the surface weather conditions made by a certified weather observer station at the Columbia Regional Airport and the testimony of the approach controller at Columbia Airport. That evidence indicates that ground visibility was only one-quarter mile due to fog.[6]

The administrative law judge concluded that the approach controller's denial of Petitioner Crawford's request for VFR clearance without any explanation of the ground visibility conditions was not sufficient to inform Crawford that he could be landing in violation of § 91.105(d)(1). Upon review, the Board recognized that although the approach controller could have provided the surface visibility conditions when he refused the VFR clearance request, his failure to do so did not permit Crawford to then assume ground visibility was sufficient to permit a VFR landing without a clearance. Furthermore, Mr. Crawford testified that he was told by Kansas City air traffic control that the weather was one-quarter mile visibility and ground fog.

The evidence in the record clearly supports the Board's conclusion that Petitioner Crawford violated FAR § 91.105(d)(1). The Board's reversal of the administrative law judge was based upon a different interpretation of essentially undisputed evidence. While the administrative law judge in essence concluded that the approach controller's failure to give Crawford the weather conditions excused any violation, the Board reviewed the evidence and found it supported a violation. The Board's interpretation is supported by substantial evidence, especially in light of the plain language of the regulation.

## III. Section 91.9 violation.

The Board concluded that because of Petitioner Crawford's violations of Federal Aviation Regulation Section 91.75(a) and Section 91.105(d)(1), the same evidence supported a "residual violation" of Federal Aviation Regulation Section 91.9 since, by

---

5. The Board correctly determined that the clearances which Petitioner Crawford finally obtained at 12:02:53 (7:02:53 A.M.) when he was on final approach, was not sufficient to automatically cancel his IFR flight plan.

6. The Board properly considered the evidence of ground· visibility rather than visibility from Petitioner Crawford's aircraft.

his actions, Respondent created a hazardous situation in a control tower airport traffic area. Upon review, this Court affirms that ruling by the Board because there is substantial evidence in the record to support that conclusion.