# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2824

_____

| | | |
|---|---|---|
| Christopher L. Watkins, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Petition for Review of an Order |
| | * | of the National Transportation |
| National Transportation Safety Board; | * | Safety Board. |
| Jane F. Garvey, Administrator, Federal | * | PUBLISHED |
| Aviation Administration, | * | |
| | * | |
| Respondents. | * | |

_____

Submitted: April 7, 1999
Filed: June 3, 1999

_____

Before McMILLIAN, LOKEN, and MURPHY, Circuit Judges.

_____

PER CURIAM.

Christopher L. Watkins petitions for review of an order of the National Transportation Safety Board (Board) finding him in violation of 14 C.F.R. §§ 91.13 (1995) (operation of aircraft in careless or reckless manner endangering life or property of another) and 135.227(e) (1995) ("no pilot may fly an aircraft into known or forecast severe icing conditions"). The Board's order was based on events that occurred on February 14, 1995, when Watkins was the pilot during a commercial cargo flight between Wichita and Great Bend, Kansas.

After the Federal Aviation Administration (FAA) issued Watkins an order suspending his airman's certificate for thirty days, an administrative law judge (ALJ) held a hearing at which the FAA presented the following evidence. Prior to his flight on the morning of February 14, Watkins received a weather briefing from a certified weather specialist or "briefer." Based on a National Weather Service Airman's Meteorological Advisory (AIRMET), the briefer told Watkins that there was "severe mixed icing below 6,000 [feet]." The AIRMET covered the entire state of Kansas and specifically forecast: "Occasional moderate mixed icing in clouds and in precipitation below . . . 17,000 feet. Isolated severe mixed icing below 6,000 [feet] and light freezing drizzle, light freezing rain." Watkins was cleared for an instruments-flight-rule flight plan at a cruising altitude of 8,000 feet, but he would pass below 6,000 feet during take-off and landing; his plane was equipped to deal with light or moderate icing, but not severe icing.

Watkins testified as to the precautions he took on the morning of his flight. At approximately 6:00 a.m. local time, he observed freezing rain in Wichita, which ended at 6:15 a.m.; his flight was scheduled to depart at 7:28 a.m. Prior to calling the briefer at approximately 6:15 a.m., Watkins had obtained a copy of the AIRMET at a direct-user-access terminal (DUAT). Watkins asked the briefer if a Significant Meteorological Advisory (SIGMET) had been issued, because, based on his experience as a pilot, he understood that a SIGMET contained flight precautions for severe icing whereas an AIRMET contained flight precautions for moderate icing. The briefer's flight precaution of "severe mixed icing" together with her confirmation that no SIGMET had been issued therefore confused Watkins. Believing he lacked sufficient information to depart safely at the scheduled time, Watkins took the following steps to verify the weather forecast. He called the "flight service" multiple times; he called the control tower multiple times for pilot reports; he repeatedly called the Great Bend automated weather service, and was "continually" logged-on at the DUAT; he called his employer to discuss the weather information; and he delayed his flight until 8:14 a.m., so that two similar aircraft could take off before he did to give him pilot reports.

The initial pilot reports indicated that light or moderate freezing-rain conditions existed in Wichita, but not severe icing; and after the freezing rain had ended, pilot reports indicated "trace" or "negative" icing. Watkins did not identify a National Weather Service report that would have amended, modified, or superseded the AIRMET's severe icing forecast, and he did not testify that he had obtained such a weather report prior to take-off. He did not encounter any icing on take-off or during the flight, but on approach into Great Bend he faced a "chance" of icing, as he had received a live report of light to moderate icing. After the flight, Watkins filed a report with the National Aeronautics and Space Administration (NASA), in which he noted that he had picked up light to moderate icing on landing into Great Bend for 800 feet and below.

The ALJ concluded Watkins had violated sections 91.13 and 135.227(e) and affirmed the thirty-day suspension of Watkins's airman's certificate, although the ALJ waived the sanction because Watkins had filed the NASA report following the flight. The Board adopted the ALJ's initial order. See Garvey v. Watkins, No. SE-14798, 1998 WL 309788 (N.T.S.B. May 28, 1998). The Board concluded that Watkins violated the regulations by proceeding with his flight despite the warning in the AIRMET of "isolated severe mixed icing" and the certified weather briefer's forecast of "severe mixed icing." The Board also determined that Watkins's pre-flight efforts to obtain pilot reports and weather briefing information from other sources were insufficient to satisfy the requirements of 14 C.F.R. § 135.227(f) (1995), which provides that a pilot may rely on current weather reports and briefing information indicating that the weather conditions have changed and that the pilot will not encounter the forecast icing conditions during the flight.

The facts pertinent to our analysis are not in dispute, and the Board's factual findings are adequately supported by evidence in the record. See Borden v. Administrator, 849 F.2d 319, 321 (8th Cir. 1988) (per curiam) (agency's factual findings reviewed to determine whether they are supported by substantial evidence in record as whole). Closer analysis is required, however, with regard to the Board's

interpretation of the regulations. Watkins argues that the AIRMET was not a valid forecast of severe icing for purposes of section 135.227(e), because by definition an AIRMET cannot forecast severe icing; that this particular AIRMET was vague; and that he took all the steps necessary to fall within section 135.227(f)'s exception regarding changed weather conditions. While we accord "substantial deference" to the Board's interpretation of the statutes and regulations it administers, see Vue v. INS, 92 F.3d 696, 699 (8th Cir. 1996), that deference is not unlimited, and we will not defer to the Board's interpretation if it is arbitrary, capricious, an abuse of discretion, or otherwise not supported by law, see Minnesota v. Apfel, 151 F.3d 742, 745 (8th Cir. 1998). "Whether an agency's action is arbitrary and capricious depends on whether the agency . . . offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Mausolf v. Babbitt, 125 F.3d 661, 669 (8th Cir. 1997) (internal quotes and quoted cases omitted), cert. denied, 118 S. Ct. 2366 (1998). We review questions of law de novo. See Gilliland v. FAA, 48 F.3d 316, 317 (8th Cir. 1995).

Watkins was understandably confused when the briefer forecast severe mixed icing based on an AIRMET, because the FAA's Aeronautical Information Manual indicates that SIGMETs cover severe icing conditions. Section 135.227(e) does, however, plainly forbid flight into "known or forecast severe icing conditions," and Watkins has not pointed us to any regulation requiring that such a forecast be issued in the form of a SIGMET. Cf. Crawford v. Engen, 823 F.2d 201, 203 (8th Cir. 1987) (upholding Board's interpretation of regulation regarding visibility requirements in light of plain language of regulation). The briefer gave Watkins a forecast of severe mixed icing based on the AIRMET, and we conclude the briefer's report and the language in the AIRMET were not overly vague. Cf. Richards v. Groszer, No. SE-10323, 1993 WL 22221, *2 (N.T.S.B. Jan. 5, 1993) (holding use of term "occasional" in SIGMET did not make icing any less "known"); Administrator v. Bowen, No. SE-2293, 1974 WL 19264, at *4 (N.T.S.B. May 22, 1974) (holding "known" does not mean near

certainty of icing conditions, only that icing conditions are being reported or forecast). Watkins's argument that he took the necessary steps to comply with section 135.227(f) is not without merit; nevertheless, he does not dispute that he failed to obtain prior to his departure a weather report from the National Weather Service, or from another approved source, indicating that the weather conditions had changed and that he would not encounter severe icing on his flight. See 14 C.F.R. §§ 91.13; 135.227(e)-(f); see also 14 C.F.R. § 135.213 (1995) (when pilot is required to use "weather report," pilot must use weather report from National Weather Service or approved source). Therefore, we conclude the Board did not commit reversible error in determining Watkins violated section 135.227(e).

Finally, after a thorough review we conclude the Board did not commit reversible error in determining that Watkins violated section 91.13's prohibition against operating aircraft in a "careless or reckless manner." See Cooper v. Hinson, 109 F.3d 997, 1001 (4th Cir. 1997) ("potential endangerment" is sufficient to sustain violation of § 91.13 where non-instrument rated pilot flew under instrument-flight rules); Nehez v. NTSB, 30 F.3d 1165, 1665 n.1, 1166-67 (9th Cir. 1994) (Board properly applied potential-for-harm standard to determine pilot violated regulations regarding visibility requirements and thus operated aircraft in careless or reckless manner under 14 C.F.R. § 91.9 (1990), renumbered at 14 C.F.R. § 91.13 (1993)).

Accordingly, we deny Watkins's petition for review.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-5-