*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0309P (6th Cir.)
File Name: 03a0309p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

FREDERICK JOHN KRATT,
            *Petitioner,*

v.                                      No. 02-3324

JANE F. GARVEY,
Administrator, Federal
Aviation Administration,
            *Respondent.*

On Appeal from the National Transportation
Safety Board.
No. SE 15239.

Argued: June 17, 2003

Decided and Filed: August 28, 2003

Before: BOGGS and GILMAN, Circuit Judges;
MARBLEY, District Judge.*

---

\* The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

---

### COUNSEL

---

**ARGUED:** G. Christopher Kelly, Atlanta, Georgia, for Petitioner. Jeffrica Jenkins Lee, UNITED STATES DEPARTMENT OF JUSTICE, CIVIL DIVISION, APPELLATE SECTION, Washington, D.C., for Respondent. **ON BRIEF:** G. Christopher Kelly, Atlanta, Georgia, for Petitioner. Jeffrica Jenkins Lee, John C. Hoyle, UNITED STATES DEPARTMENT OF JUSTICE, CIVIL DIVISION, APPELLATE SECTION, Washington, D.C., for Respondent.

---

### OPINION

---

ALGENON L. MARBLEY, District Judge. Frederick John Kratt ("Kratt" or "Petitioner") petitions this Court to review the decision of the National Transportation Safety Board ("NTSB"), affirming the revocation of his pilot's license. Respondent, the Administrator of the Federal Aviation Administration (the "Administrator"), revoked Kratt's pilot's license because he pleaded guilty to the charge of possession of marijuana with the intent to distribute and flew an airplane in the commission of that crime. Kratt appealed the Administrator's order revoking his pilot's license to the NTSB, which affirmed the Administrator's order. Kratt now seeks review of the NTSB's order, contending that the order was based on insufficient evidence to revoke his license and that he was denied due process of law. This Court has jurisdiction over this appeal from the NTSB pursuant to 49 U.S.C. § 44710(d)(3), which specifically gives this Court authority to review NTSB orders revoking a pilot's license, and 49 U.S.C. § 46110(a), which generally vests this Court with jurisdiction over petitions for review of an order of the Administrator of the FAA. For the following reasons, we **AFFIRM** the order of the NTSB.

## I. BACKGROUND

### A. Factual Background

Petitioner lives outside Memphis, Tennessee, where he has been an automobile salesman for about twenty years. Although his primary job is selling cars, he has a passion for flying airplanes. To fund his interest in flying, Kratt has frequently chartered or leased airplanes and flown people for hire to both business and pleasure destinations. In April 1996, Kratt began to fly business trips for Andre Johnson, one of his automobile customers. Only later did Kratt learn that Andre Johnson was transporting marijuana from Texas to Memphis. Kratt first flew Johnson and his brother to McAllen, Texas, a town near the Mexican border. Kratt believed that Johnson owned a cleaning business of some kind and did not think to question his reasons for traveling to Texas.

Later, Kratt flew Johnson's brother to Harlingen, Texas, and flew a third trip with Johnson's brother and cousin to Brownsville, Texas. On the third trip, the brother took a bus home and, during the flight home with the cousin, Kratt thought he smelled marijuana in his plane. Kratt asked the cousin about the odor, who informed him that they had been transporting marijuana on all three trips. Kratt became angry and landed his plan in Texarkana, where he put Johnson's cousin and his bags out of the plane. Kratt did not receive payment for the third trip.

Although Kratt planned never to fly again for Johnson, he ultimately gave in when Johnson repeatedly telephoned him and threatened to injure Kratt's children. During the fourth trip to Texas, Johnson's cousin allegedly kept Kratt at gunpoint during the entire trip. On the trip home, Kratt first landed his plane at an airport in Mississippi where customs officials were waiting for him. Johnson's cousin ordered Kratt to take off again immediately after they landed. Kratt flew the plane to another airport nearby, where they

abandoned the plane. Later that night, Kratt called an attorney, who assisted him in surrendering to customs officers.

Kratt eventually agreed to plead guilty to possession of marijuana with intent to distribute and to testify against Johnson and the other men involved with the drug operation that Kratt had been facilitating. Kratt was unaware that he could lose his pilot's license by pleading guilty and feared that if he did not plead guilty, he would face greater harm to his life and career.

On August 25, 1996, Kratt entered his plea of guilty before the United States District Court for the Northern District of Mississippi to the charge of possessing with intent to distribute approximately 200 pounds of marijuana. At Kratt's plea hearing, the United States presented the following factual basis for Kratt's plea:

> The government would show that on or about May the 15th, 1996, Frederick John Kratt piloted a plane, to wit: A Cessna 182 Skylane aircraft, from south Texas to the Olive Branch, Mississippi airport, briefly stopping before continuing onto the Holly Springs Airport in Marshall County, Mississippi. Upon arriving at the Holly Springs Airport, the defendant and a passenger abandoned the airplane and attempted to escape.

> The government would show that the defendant's aircraft was being surveilled from south Texas to the Holly Springs Airport by a chase plane operated by the U.S. Custom[s] Service agents utilizing a forward looking infrared tracking system known as Fleer. When the defendant's plane initially arrived at the Olive Branch, Mississippi airport, U.S. Custom[s] agents on the ground attempted to block the runway, but were unsuccessful, and the defendant's plane took off headed for the Holly Springs Airport where the plane [was] abandoned after landing.

The government would show through testimony and documentary evidence that approximately 200 pounds of marijuana was seized from the area immediately surrounding the airplane along with the flight log and flight bag and other documentation linking the defendant to the abandoned airplane.

The government would further show that the surveilling agents witnessed the removal of the marijuana from the airplane by one of its occupants prior to being abandoned.

The government would show further that shortly thereafter the defendant contacted the U.S. Custom[s] Service and surrender[ed] to authorities. The government would show that the defendant thereafter fully cooperated with the U.S. Customs Service admitting his involvement and the involvement of others in the possession with intent to distribute marijuana recovered from the defendant's plane.

After the United States presented this factual basis for its charges against Kratt, the court asked him, "Is the factual basis essentially correct, Mr. Kratt?" Kratt responded, "Yes, sir."

### B. Procedural History

The Federal Aviation Administration ("FAA") sent Kratt a letter on June 23, 1997, informing him that he was under investigation because he had pled guilty to possession of marijuana with intent to distribute. Kratt accepted the opportunity to respond to the FAA's letter, and wrote a handwritten response in which he explained the circumstances surrounding his conviction. Although he argued that he was not a willing participant in the crime, he noted that he "felt responsible for at least some of the crime." The FAA sent Kratt a Notice of Proposed Certificate Action on August 27, 1997, notifying Kratt that it intended to revoke his pilot's

certificate because he had been convicted of possession of marijuana with intent to distribute and had used an aircraft and served as an airman in connection with the offense. The FAA issued its Order of Revocation on April 29, 1998, but only after Kratt had a telephone conference with the FAA in February 1998. Kratt chose to appeal the FAA's decision to the NTSB, and the FAA filed its Complaint, consisting of a copy of its Order of Revocation, before the NTSB on May 18, 1998. The FAA's Complaint stated that Kratt's pilot's license was revoked pursuant to 14 C.F.R. § 61.15(a)(2), 49 U.S.C. § 44709(b), and 49 U.S.C. § 44710(b)(1).

On August 17, 1999, an Administrative Law Judge ("ALJ") granted the Administrator partial summary judgment affirming her revocation of Kratt's pilot's license pursuant to 14 C.F.R. § 61.15(a)(2). That provision permits the revocation of a pilot's license if the pilot is convicted of certain drug-related offenses. *See* 14 C.F.R. § 61.15(a)(2) (2003). But the ALJ denied the Administrator summary judgment regarding revocation of Kratt's license pursuant to 49 U.S.C. § 44710(b)(1). The ALJ determined that summary judgment was not appropriate because revocation pursuant to § 44710(b)(1) requires the Administrator to establish that Kratt was not only convicted of a drug-related offense, but also that an aircraft was used in commission of the offense and that Kratt served as an airman or was on the aircraft in commission of the offense. *See* 49 U.S.C. § 44710(b)(1)(A), (B) (West 2003).

On November 30, 1999, the ALJ held a hearing on the record to consider evidence regarding the revocation of Kratt's pilot's license pursuant to § 44710(b)(1). The ALJ ultimately found that the transcript of Kratt's plea hearing conclusively established that the requirements of § 44710(b)(1) were satisfied. Nevertheless, the ALJ heard testimony from Kratt concerning his conviction. Kratt appealed the decision of the ALJ to the full NTSB, which affirmed the ALJ's ruling. Finally, the NTSB denied Kratt's request for reconsideration.

Kratt now petitions this Court for review of the NTSB's decision.

## II.  STANDARD OF REVIEW

We review the NTSB's factual findings according to the "substantial evidence" standard of review. "Findings of fact of the Board are conclusive if supported by substantial evidence." 49 U.S.C.A. § 44710(d)(3) (West 2003) (providing for judicial review specifically for revocation of a pilot's license); *see also* § 46110(c) (providing generally for judicial review of decisions of the Administrator). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938); *Blackman v. Busey*, 938 F.2d 659, 661 (6th Cir. 1991) (applying substantial evidence standard for reviewing revocation of pilot's license). The Administrative Procedure Act ("APA") also requires the substantial evidence standard of review in this case. 5 U.S.C.A. § 706(2)(E) (West 2003). According to the APA, this Court has authority to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute." *Id.* The decision of the NTSB under review in this case was made "after providing notice and an opportunity for a hearing on the record." 49 U.S.C.A. § 44710(d)(1). Therefore, the substantial evidence standard of 5 U.S.C.A. § 706(2)(E) is applicable in this case. *See Camp v. Pitts*, 411 U.S. 138, 141 (1973) (noting that the "substantial evidence" test is used "when reviewing findings made on a hearing record").

We review questions of law on appeal from the NTSB *de novo*. *Watkins v. NTSB*, 178 F.3d 959, 961 (8th Cir. 1999) ("We review questions of law *de novo*."); *Zukas v. Hinson*, 124 F.3d 1407, 1409 (11th Cir. 1997) ("We review the interpretation of constitutional and statutory provisions by the

NTSB *de novo*."); *Bennett v. NTSB*, 66 F.3d 1130, 1136 (10th Cir. 1995) ("[W]e review [the NTSB's] interpretation of constitutional or statutory provisions *de novo*."); *Essery v. NTSB*, 857 F.2d 1286, 1288 (9th Cir. 1988) (noting that when reviewing NTSB decisions, "[p]urely legal questions are reviewed *de novo*").

## III.  DISCUSSION

### A.  Evidence to Support Revocation

Kratt argues that the Administrator relied on insufficient evidence when she revoked his pilot's license pursuant to 49 U.S.C. § 44710(b)(1). He maintains that his criminal conviction for possession of marijuana with intent to distribute was insufficient evidence to satisfy the requirements of § 44710(b)(1) for revocation of his pilot's license. The Administrator contends that Kratt's guilty plea provided sufficient evidence for revocation pursuant to § 44710(b)(1) and that the Administrator and the NTSB in fact relied on more than just Kratt's conviction.

The Administrator is required to revoke an individual's "airman certificate" if that individual

is convicted, under a law of the United States or a State related to a controlled substance (except a law related to simple possession of a controlled substance), of an offense punishable by death or imprisonment for more than one year if the Administrator finds that—

(A) an aircraft was used to commit, or facilitate the commission of, the offense; and

(B) the individual served as an airman, or was on the aircraft, in connection with committing, or facilitating the commission of, the offense.

49 U.S.C. § 44710(b)(1). The term "airman" is defined to include a "pilot, mechanic, or member of the crew, who

navigates aircraft when under way." 49 U.S.C.A. § 40102(a)(8)(A). Therefore, this Court can overturn the NTSB's decision only if that decision was based on less than substantial evidence that Kratt was convicted of the specified type of crime, that an aircraft was used in the commission of the offense, and that Kratt either "served as an airman" or "was on the aircraft" in connection with committing the offense.

Kratt does not dispute that he was convicted of a drug-related crime punishable by death or imprisonment for more than one year. He was convicted pursuant to 21 U.S.C. § 841, and sentenced to two years in prison. Kratt argues that the NTSB erred by relying solely on his conviction for evidence that an airplane was used in commission of his offense and that he served as an airman or was on the aircraft in commission of the offense. In fact, the NTSB relied not only on Kratt's conviction, but also on the transcript of Kratt's plea hearing and his testimony before the ALJ.

When the Administrator moved for summary judgment before the NTSB, the ALJ decided that Kratt's conviction alone was insufficient evidence to prove that an aircraft was used in commission of the offense and that Kratt served as an airman or was on the aircraft in connection with the offense. Later, when presented with the transcript from Kratt's plea hearing, the ALJ decided that the transcript provided sufficient evidence that Kratt served as an airman in commission of the offense to which he pled guilty.

The facts that the United States presented established that Kratt had served as the pilot of a plane carrying 200 pounds of marijuana. When the judge at the plea hearing asked Kratt whether the "factual basis" presented by the government was "essentially correct," Kratt responded, "Yes, sir." The ALJ rejected Kratt's argument that he only meant that the facts presented by the United States were the facts that the government intended to prove, not that those were the actual facts. The ALJ found that the "question asked by the court [at

Kratt's plea hearing] was clear and unequivocal and does not reasonably permit the construction urged by [Kratt] now."

Therefore, we find that the ALJ relied on sufficient evidence to uphold the Administrator's determination that Kratt served as an airman in commission of the offense to which he pled guilty. Contrary to Kratt's contention, the ALJ relied not just on Kratt's conviction, but also considered the evidence in the transcript from Kratt's guilty plea hearing.

Furthermore, although the ALJ determined that the testimony from Kratt's plea hearing was sufficient evidence to support revocation of Kratt's pilot's license, the ALJ nevertheless heard testimony from Kratt regarding his conviction. Kratt admits that he piloted the aircraft in which the marijuana was transported, and admits in his answer filed before the NTSB that he served as the pilot in commission of the offense, but he denies that he was a willing participant.

Kratt also argues that the term "served" as an airman "connotes that the individual knowingly and willingly used an airplane in the commission of a crime." Pet'r Br. at 8. Section 44710(b)(1), however, contains no such requirement. Rather, the statute states that the Administrator must find that the "individual served as an airman, or was on the aircraft, in connection with committing, or facilitating the commission of, the offense." 49 U.S.C.A. § 44710(b)(1)(B). There is no requirement, therefore, that one knowingly and willingly serve as an airman prior to revocation of the individual's pilot's license. Nor is there a requirement that one serve as an airman at all. Rather, one need only be on the aircraft. Despite what Kratt claims about his willingness to pilot his airplane, he does not deny that he was on the aircraft during commission of the offense to which he pled guilty.

To the extent that the statute requires that an individual act knowingly or willingly prior to having his pilot's license revoked, that requirement is embedded in the requirement that the individual be convicted of a drug-related offense. Indeed,

the crime to which Kratt pled guilty includes the requirement that he acted "knowingly or intentionally." 21 U.S.C.A. § 841(a) (West 2003). During Kratt's guilty plea hearing, the judge informed Kratt of these elements of the crime, and Kratt chose to plead guilty.

Although Kratt argues that he flew Andre Johnson and his companions only under duress, the ALJ noted that the Administrator cannot question the validity of Kratt's guilty plea when deciding whether to revoke his pilot's license. The revocation statute expressly states that the "Administrator has no authority . . . to review whether an airman violated a law of the United States or a State related to a controlled substance." 49 U.S.C.A. § 44710(b)(3); *see also Rawlins v. NTSB*, 837 F.2d 1327, 1329 (5th Cir. 1988) ("Congress obviously determined that a harsh penalty was the only advisable response to drug trafficking violations by FAA-certified pilots."). Additionally, NTSB precedent establishes that it may not entertain a collateral attack on Kratt's conviction. *See Hinson v. Manning*, NTSB Order No. EA-4363, Docket No. SE-13714, 1995 NTSB LEXIS 48, *3 (May 10, 1995); *Hinson v. Gilliland*, NTSB Order No. EA-4149, Docket No. SE-12706, 1994 NTSB LEXIS 113, *3 n.7 (Apr. 14, 1994). Kratt's belated defense of duress is one that he could have raised in his criminal proceeding in lieu of a guilty plea, but it is too late to do so now.

Finally, Kratt argues that the Administrator's interpretation of the revocation statute is too broad because it would require revocation of a commercial pilot's license if the pilot flew a plane on which a passenger was carrying illegal drugs. This is not true, however, because the statute requires that the pilot be convicted of a drug-related offense before revocation of the pilot's license. In Kratt's hypothetical, there is no reason that a commercial pilot would be convicted of a drug-related crime if unbeknownst to the pilot, a passenger carries illegal drugs onto the plane. In this case, however, Kratt has pled guilty to possession of marijuana with intent to distribute.

For the foregoing reasons, we find that the NTSB's decision affirming the Administrator's order revoking Kratt's pilot's license is supported by substantial evidence.

## B. Due Process

### 1. Facial Challenge to 49 U.S.C. § 44710

Kratt argues that he was deprived of his constitutional right to due process when the Administrator revoked his pilot's license based on his conviction for possession of marijuana with intent to distribute.[1] At oral argument, counsel for Kratt argued that 49 U.S.C. § 44710(b) is unconstitutional on its face because it provides for automatic revocation of a pilot's license when a pilot is convicted of certain drug-related crimes.

In determining what procedural due process protections are required, we must consider the following three factors:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). With respect to the first factor, the private interest at stake under 49 U.S.C. § 44710(b) is a pilot's license. A pilot's license is a

---

[1] The NTSB did not consider Kratt's due process argument. Rather, in its Order Denying Reconsideration, the NTSB noted that "[t]o the extent that [Kratt] has articulated for the first time in his petition a constitutional challenge to the Administrator's authority to use a criminal conviction to support a certificate revocation, it is answer enough to note that the [NTSB] can not entertain such arguments."

sufficiently important interest that a licensee is entitled to some due process protections when it is revoked. *See Bennett v. NTSB*, 66 F.3d 1130, 1137 (10th Cir. 1995) (noting that Fifth Amendment due process protections apply to revocation of pilot's license); *see also Dixon v. Love*, 431 U.S. 105, 112 (1977) (noting that due process protections are required for deprivation of driver's license); *Bell v. Burson*, 402 U.S. 535, 539 (1971) (holding that due process is required for revocation of driver's license). Although revocation of a pilot's license may significantly impair the ability of a professional pilot to earn a living, such a license is generally not essential to a person's survival. *See Dixon*, 431 U.S. at 113 (finding that driver's license is not "so vital and essential as are social insurance payments on which the recipient may depend for his very subsistence") (citing *Goldberg v. Kelly*, 397 U.S. 254, 264 (1970)).

The second *Matthews* factor requires us to consider the risk of erroneous deprivation under the procedures provided in 49 U.S.C. § 44710 and the potential value of additional procedural safeguards. *See Matthews*, 424 U.S. at 335. The statute in this case permits a licensee to appeal the decision of the Administrator to the NTSB, which "shall affirm or reverse the order after providing notice and an opportunity for a hearing on the record." § 44710(d)(1). Notice and an evidentiary hearing, as provided under the statute, are the touchstones of procedural due process. *See Matthews*, 424 U.S. at 333 ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'") (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *Goldberg v. Kelly*, 397 U.S. 254, 267–68 (1970) (noting that notice and an evidentiary hearing are the general procedures that due process affords).

In some cases, the question before courts has been whether due process mandates a pre-revocation hearing or whether a hearing after a license or other entitlement has been revoked is sufficient. In *Goldberg*, for example, the Supreme Court held that a person is entitled to an evidentiary hearing *before*

welfare benefits are revoked because such benefits may be essential to a person's subsistence. 397 U.S. at 264. On the other hand, a post-revocation hearing is sufficient for revocation of social security disability benefits. *Matthews*, 424 U.S. at 340–41. A post-revocation hearing is also sufficient when a driver's license is revoked based on numerous traffic violations or accidents, especially where hardship or commercial necessity would allow the licensee to obtain a restricted license between the time of revocation and the hearing. *Dixon*, 431 U.S. at 113.

In this case, however, we need not decide whether a pre-revocation hearing is required when a pilot's license is revoked because the statute in fact provides for a pre-revocation hearing.[2] When a pilot appeals the Administrator's revocation of a license, the revocation is stayed until the NTSB decides the appeal, except in extraordinary circumstances where the Administrator advises the NTSB that the safety of air transportation requires an immediate revocation. 49 U.S.C.A. § 44710(d)(2). In cases where the Administrator requires immediate revocation, the NTSB must decide the appeal within sixty days. *Id.* This provision permitting the Administrator to require immediate revocation for safety reasons does not deprive a licensee of due process because an opportunity for a hearing is nevertheless provided and the public's safety justifies revocation before the hearing. *See Dixon*, 431 U.S. at 114 (finding that prompt removal of unsafe drivers from the road justified use of post-revocation hearings for driver's license revocations based on multiple traffic violations or accidents).

In this case, Kratt was afforded a pre-revocation hearing. He argues, however, that § 44710 on its faces deprives

---

[2]Kratt even admits in his brief that "[t]he existing system in the NTSB is exceptional in its attempt to provide notice and hearing as a matter of course prior to revocation, unlike many systems that have only post-revocation hearings."

licensees of procedural due process because it requires an automatic revocation of a pilot's license in the sense that the Administrator and the NTSB may not review whether a licensee in fact committed the drug-related crime for which he was convicted. 49 U.S.C.A. § 44710(b)(3). The statute does require a finding that the licensee was convicted of a drug-related felony, that an aircraft was used in commission of the offense, and that the licensee served as an airman or was on the aircraft in connection with committing the offense. 49 U.S.C.A. § 44710(b)(1). Due process, however, does not require that a licensee be permitted an opportunity to probe the merits of his criminal conviction. Rather, the licensee must address the merits of his conviction during the criminal proceedings concerning the criminal charges against him. *See Dixon*, 431 U.S. at 113 (finding that automatic revocation of driver's license based on convictions for numerous traffic violations did not risk erroneous deprivation of license); *Bell*, 402 U.S. at 540 (finding that adjudication of liability for a traffic accident was not appropriate during an administrative hearing concerning the potential revocation of a driver's license). Therefore, the fact that the statute prohibits the Administrator from reviewing the merits of a criminal conviction does not risk erroneous deprivation of a pilot's license.

The third *Matthews* factor requires us to consider the government's regulatory interest and the fiscal and administrative burdens that additional procedural safeguards would require. *See Matthews*, 424 U.S. at 335. We need not give this factor much consideration because no additional procedures are required to afford due process under § 44710. The statute already provides for notice and an evidentiary hearing on the record before revocation of a pilot's license.

Therefore, we find that 49 U.S.C. § 44710 provides adequate procedural safeguards when a pilot's license is revoked. By providing notice and an opportunity for a pre-revocation evidentiary hearing on the record, the statute provides all that due process requires.

### 2. Application of 49 U.S.C. § 44710 in Kratt's Case

Kratt also argues in his brief that the application of 49 U.S.C. § 44710(b) in this case denied him of due process. Kratt essentially makes two arguments. First, he argues that use of his conviction as grounds for revocation denied him of due process because he had no notice when he pled guilty that his pilot's license would be revoked. Second, he argues that he had no opportunity for a hearing on the issue of whether he served as an airman in commission of the offense to which he pled guilty because the ALJ relied solely on his conviction to uphold the Administrator's revocation of his pilot's license. The Administrator argues that due process did not require Kratt to be informed of all possible consequences of his guilty plea and that he was afforded due process during his revocation proceedings before the Administrator and the NTSB.

Kratt contends that he was deprived of due process when he pled guilty to possession of marijuana with intent to distribute because he was not given notice that he could lose his pilot's license for pleading guilty. The Administrator argues that there is no constitutional requirement that a criminal defendant be informed of all possible consequences of a guilty plea. The court accepting a criminal defendant's guilty plea "is under no constitutional obligation to inform the defendant of all the possible collateral consequences of the plea." *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994). "A collateral consequence is one that 'remains beyond the control and responsibility of the district court in which that conviction was entered.'" *El-Nobani v. United States*, 287 F.3d 417, 421 (6th Cir. 2002) (deciding that "deportation is collateral to conviction") (quoting *United States v. Gonzalez*, 202 F.3d 20, 27 (1st Cir. 2000)). Just like deportation in *El-Nobani*, revocation of Kratt's pilot's license is a matter beyond the control and responsibility of the district court that accepted Kratt's guilty plea. Therefore, Kratt's constitutional rights were not violated when the district court failed to notify

him that his pilot's license would be revoked if he pled guilty to possession of marijuana with intent to distribute.

In any event, the real issue before this Court is not whether Kratt received due process during his criminal proceedings, but rather, whether he was afforded due process in proceedings related to the revocation of his pilot's license. The Administrator is not permitted to review whether Kratt in fact committed a drug-related crime, 49 U.S.C.A. § 44710(b)(3); rather, the Administrator need determine only whether Kratt was convicted of a drug-related crime, 49 U.S.C.A. § 44710(b)(1). Kratt does not deny that he was convicted of possession of marijuana with intent to distribute. Section 44710(b)(1) requires only that Kratt have been convicted of such a crime before his pilot's license is revoked. The statute does not require, nor does it permit, the Administrator to probe whether Kratt in fact committed the crime. Therefore, there is no risk of erroneous deprivation of Kratt's license if the Administrator fails to consider evidence mitigating Kratt's conviction. Although Kratt may not like the result of his pleading guilty to a crime he claims he did not commit, whether he in fact committed the crime does not bear on whether his pilot's license was erroneously revoked.

Although Kratt contends that he had no opportunity for a hearing on the issue of whether he served as an airman or was on the aircraft in connection with the offense to which he pled guilty, Kratt in fact did receive numerous opportunities to present evidence regarding his participation in the crime. Kratt first received a letter from the FAA notifying him that he was under investigation in June 1997. He was given an opportunity to provide the FAA with information at that time, and he sent the FAA a seven-page handwritten letter. The FAA next sent Kratt a Notice of Proposed Certificate Action in August 1997, notifying Kratt that the FAA planned to revoke his pilot's license. Kratt was then afforded a telephone conference with the FAA in February 1998 before the FAA issued its Order of Revocation in April 1998. Kratt then appealed the FAA's order to the NTSB, and after the

FAA's motion for summary judgment was granted in part and denied in part, Kratt received a hearing on the record before an ALJ in November 1999.

Therefore, we conclude that Kratt received all the process he was due when the Administrator revoked his pilot's license and the NTSB affirmed the Administrator's order.

## IV. CONCLUSION

For the foregoing reasons, we **AFFIRM** the order of the NTSB affirming the Administrator's revocation of Kratt's pilot's license.