**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

D. J. COOPER,
Petitioner,

v.

DAVID R. HINSON, Administrator,

No. 96-1617

Federal Aviation Administration;
NATIONAL TRANSPORTATION SAFETY
BOARD,
Respondents.

On Petition for Review of an Order of the
United States Department of Transportation.
(SE-13612)

Argued: January 30, 1997

Decided: April 3, 1997

Before HALL and ERVIN, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Petition for review denied by published opinion. Judge Ervin wrote
the opinion, in which Judge Hall and Senior Judge Butzner joined.

_____

**COUNSEL**

**ARGUED:** Evans B. Jessee, Roanoke, Virginia, for Petitioner. Rob-
ert Paul Vente, Enforcement Division, Office of Chief Counsel, FED-
ERAL AVIATION ADMINISTRATION, Washington, D.C., for
Respondents. **ON BRIEF:** Kathleen A. Yodice, Acting Manager,

Appellate Branch, Enforcement Division, Office of Chief Counsel, FEDERAL AVIATION ADMINISTRATION, Washington, D.C., for Respondents.

_____

**OPINION**

ERVIN, Circuit Judge:

Petitioner D.J. Cooper seeks review of an order suspending his pilot certificate for 60 days. The National Transportation Safety Board (Board), Respondent here,[1] found that Cooper was the pilot in command of a flight during which he operated an aircraft under instrument flight rules without holding an instrument rating and thereby endangered the lives of his passengers, in violation of two Federal Aviation Regulations. We deny Cooper's petition for review.

I.

The basic facts are not generally in dispute. Cooper, William Saker, and two passengers boarded a Piper Saratoga airplane for a return flight to Roanoke, Virginia, from Atlantic City, New Jersey, on January 24, 1993. Cooper, part owner of the airplane, has possessed a private pilot's license since 1969, but he does not hold an instrument rating or airplane transport pilot certificate. Saker, with more than 60 years and 15,000 to 20,000 hours of flight time experience, was rated for instrument flight rules (IFR), but his certification was not current on the date of the flight, a fact that he never told Cooper. Although the exact number is in dispute, Cooper and Saker had flown together between 25 and 40 times.

As was their wont, Cooper took the left seat, Saker the right.[2] At the time of departure, weather reports and forecasts indicated conditions were above visual flight rules (VFR) minima. However, as the

_____

[1] David R. Hinson, Administrator of the Federal Aviation Administration, is also Respondent pursuant to 49 U.S.C. § 44709.
[2] The left seat is normally occupied by the pilot in command of the flight.

plane neared Washington, D.C., the weather deteriorated to below VFR minima. Cooper alleges that Saker instructed him to call air traffic control (ATC) to obtain IFR clearance, which ATC granted. Cooper claims that had Saker not so advised him, he would have reversed course. The plane hit severe turbulence as it approached Roanoke. Cooper was unable to negotiate the instrument approach to the airport. He claims he implored Saker, "Help me. Help me." Br. of Pet'r at 9. Saker testified that he believed Cooper was requesting help from ATC, not from him. Br. of Resp't at 8-9. Saker did state prior to the hearing in this matter, however, that had he understood Cooper to be asking for his help, he would have taken over. Id. at 9. ATC subsequently told Cooper he could declare an emergency to obtain a preferential landing clearance, and Cooper declared the emergency. He landed the plane safely, apparently without any help from Saker.

During its investigation of the incident, the Federal Aviation Administration (FAA) determined that Cooper had logged the entire flight as the pilot in command (PIC), including the two-hour portion operated under IFR. See Suppl. App. at 10. Cooper claimed that this was for insurance purposes only. He also did not reveal to the FAA his later claim that Saker had manipulated the throttle at one point.

The FAA subsequently issued an order suspending Cooper's pilot certificate for 120 days, charging him with violating two Federal Aviation Regulations, 14 C.F.R. § 61.3(e)(1), [3] for acting as PIC under IFR without the appropriate rating, and 14 C.F.R.§ 91.13(a),[4] for careless or reckless operation that could endanger the life or property

_____

[3] 14 C.F.R. § 61.3(e) provides in pertinent part:

> Instrument Rating. No person may act as pilot in command of a civil aircraft under instrument flight rules, or in weather conditions less than the minimums prescribed for VFR flight unless--
>
> (1) In the case of an airplane, he holds an instrument rating or an airline transport pilot certificate with an airplane category rating on it; . . . .

[4] 14 C.F.R. § 91.13(a) provides:

> Aircraft operations for the purpose of air navigation. No person may operate an aircraft in a careless manner so as to endanger the life or property of another.

3

of another. Upon appeal, an Administrative Law Judge (ALJ) affirmed the FAA's order but modified the sanction to a 60-day suspension. Upon further appeal, the Board affirmed the ALJ's decision. The Board rejected Cooper's contention that Saker, and not he, was the PIC based upon the relationship developed between the two over many flights. Instead, the Board determined that sufficient evidence supported the ALJ's conclusion that Cooper was the PIC since

> [Cooper] was the owner of the aircraft; he sat in the left seat; he handled the controls and radio communications; he decided the details of the flight; he had the power to return to more favorable weather conditions if he so chose; he logged the entire flight time in his logbook as PIC; there was no agreement between [Cooper] and his passenger, Bill Saker, that Mr. Saker would act as PIC and assume the ultimate responsibility for the flight; and [Cooper] unilaterally made the decision to declare an emergency.

Hinson v. Cooper, No. EA-4433, slip op. at 3-4 (N.T.S.B. Mar. 8, 1996). In addition, the Board found ample support for the ALJ's finding that Cooper "operated an aircraft under IFR conditions when he did not have an IFR rating and that this action was careless, potentially endangering the lives and property of others." Id. at 5. This petition for review followed.

II.

The Administrator possessed jurisdiction to issue an order suspending Cooper's pilot certificate pursuant to 49 U.S.C.§ 44709(b). The Board possessed jurisdiction to hear Cooper's appeals pursuant to 49 U.S.C. § 44709(d). We possess appellate jurisdiction pursuant to 49 U.S.C. § 1153(a).

The Board's factual findings are deemed conclusive if supported by substantial evidence. 49 U.S.C. § 1153(b)(3). "The substantial evidence test is a narrow standard of review. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Chritton v. NTSB, 888 F.2d 854, 856 (D.C. Cir. 1989) (internal quotation marks and citation omitted). Once the findings are determined to be supported by substantial evidence, the

4

reviewing court "must accept also the conclusions drawn therefrom unless they are seen to be arbitrary or capricious, or to rest on premises that are deemed contrary to ascertainable legislative intent, or are otherwise contrary to law." Western Air Lines, Inc. v. Civil Aeronautics Bd., 495 F.2d 145, 152 (D.C. Cir. 1974) (stating standard under predecessor statute, 49 U.S.C. § 1486(e)).

III.

Federal Aviation Regulations define the PIC as the"pilot responsible for the operation and safety of an aircraft during flight time." 14 C.F.R. § 1.1. The Board has found that this definition means that

> the pilot in command is not necessarily the pilot who physically operates the controls or directs the course of a given flight. Rather, the pilot in command is the pilot who possesses ultimate decisional authority for such control or direction whether or not actually exercised during the flight.

Administrator v. Jeffreys, 4 N.T.S.B. 681, 1982 WL 44916 at *2 (Dec. 27, 1982). The Board has looked to a number of factors as indicia of responsibility for an aircraft's operation, including, inter alia, actual manipulation of controls and radio, seating position, and ownership interests. Harris v. Rajaratnam, No. EA-3497, 1992 WL 40525 at *2 (N.T.S.B. Jan. 29, 1992).

In this case, Cooper's ownership is undisputed. There is also no dispute that Cooper occupied the left seat, the position normally occupied by the PIC. See Administrator v. McCormmach , 4 N.T.S.B. 1503, 1984 WL 62062 at *2 (June 28, 1984). While Cooper contends that at one point Saker manipulated the throttle, despite having failed to reveal this during the FAA's investigation, such an alleged manipulation of the controls by Saker is not dispositive as to this factor. See Administrator v. van Toornburg, 5 N.T.S.B. 1074, 1986 WL 82405 at *4 n.9 (Apr. 3, 1986) (finding that the charged pilot's "temporary relinquishment of the controls because of his copilot's apparently superior skills in executing an instrument approach does not demonstrate that the [charged pilot] did not have the ultimate decisional authority for the flight or that [the charged pilot's] exercise of that authority to allow the copilot to complete the landing constituted an

5

abandonment of [the charged pilot's] decisional prerogatives"). More-over, all radio communications were made by Cooper.

Instead, the thrust of Cooper's argument is that, although there was no express agreement between Cooper and Saker as to who was PIC, the basic tacit understanding between them, developed over dozens of flights, was that Saker became PIC after the IFR conditions were encountered, since Cooper knew he was not IFR rated and Saker held out that he currently was. In support of his position, Cooper relies on Rajaratnam. In that case, Rajaratnam owned the aircraft, sat in the left seat, and manipulated the controls. He, however, held only a student pilot certificate and believed that so long as he flew with a pilot who possessed a higher rated certificate, then that copilot, knowing Rajaratnam was only a student pilot, would automatically serve as PIC since a student pilot cannot lawfully be the PIC with a passenger on board. Although the Board found appealing Rajaratnam's argu-ment that such a copilot must have implicitly accepted PIC responsi-bility for the flight, it did not decide the case on that basis. See Rajaratnam, 1992 WL 40525 at *2. Instead, the Board reversed the revocation order on the ground that the copilot readily admitted that, because he outranked Rajaratnam, he would have taken over com-mand in the event of an emergency. The Board found this factor dis-positive, for it "establishe[d] that while[Rajaratnam] may have been the pilot in charge of the physical management of the aircraft, [this copilot] was the pilot who possessed the ultimate responsibility for the safety of the operation." Id. at *3.

While there are a number of important similarities between Rajaratnam and the instant case, the Board rejected Cooper's argu-ment and distinguished Rajaratnam. In particular, three important fac-tors, not present in Rajaratnam, warranted the finding that Cooper was the PIC. First, Rajaratnam did not log his flight time as PIC, whereas Cooper logged the entire 3 hour 20 minute flight as PIC, including the 2 hours under IFR conditions. See Cooper, No. EA-4433, slip op. at 4. Second, Rajaratnam's copilot testified he would have taken over in an emergency, and, at least on some of their previous flights together, he had expressly agreed to be PIC. Saker was never asked what he would have done in an emergency, and Coo-per admits that he and Saker had no express agreement as to who would be PIC. See id. at 4-5. Finally, when Cooper did encounter dif-

6

ficulty, he unilaterally declared an emergency. Saker did not assume command of the airplane. See id. at 5.

The Board adopted the ALJ's findings that the two most critical factors in determining that Cooper was the PIC were Cooper's own log book entry, which directly contradicts Cooper's claim that Saker was PIC, and Cooper's unilateral decision to declare an emergency, a decision that only the PIC can make. See id. at 3; J.A. at 460-61. Substantial evidence plainly supports these findings. See Chritton v. NTSB, 888 F.2d 854, 856 (D.C. Cir. 1989) (stating substantial evidence standard). And it was certainly not arbitrary or capricious for the Board, in agreement with the ALJ, to conclude that Saker did not possess the ultimate decisional authority and that Cooper did. See Cooper, No. EA-4433, slip op. at 5; Western Air Lines, Inc. v. Civil Aeronautics Bd., 495 F.2d 145, 152 (D.C. Cir. 1974) (stating that once the findings are determined to be supported by substantial evidence, the reviewing court "must accept also the conclusions drawn therefrom unless they are seen to be arbitrary or capricious, or to rest on premises that are deemed contrary to ascertainable legislative intent, or are otherwise contrary to law"). We, therefore, see no basis to overturn the Board's conclusion that Cooper was the PIC on the flight in question.[5]

Cooper further contends that even if he is found to be the PIC, in these circumstances, with Saker aboard, he was not reckless or careless so as to endanger the life or property of another within the meaning of 14 C.F.R. § 91.13(a). He provides no authority to support his position, however. Instead, it is well-established that "potential endangerment" is sufficient to sustain a violation of§ 91.13(a). See, e.g., Hinson v. Evanko, No. EA-4221, 1994 WL 409525 at *4 & n.11 (N.T.S.B. July 19, 1994) (citing cases). Indeed, the Board has repeatedly found that a non-instrument rated pilot's operation of an aircraft in IFR conditions is careless, creating the potential for endangerment,

_____

[5] Cooper's additional reliance on Hinson v. Thomas, No. EA-4309 (N.T.S.B. Jan. 4, 1995), is misplaced. In Thomas both the pilot and copilot were held accountable and sanctioned. Thomas, at 4-5 & 5 n.6. Whether Saker was, or should be, sanctioned for his role in this matter is not before us. The sanction against Cooper stems from his own behavior.

within the meaning of the regulation. See Administrator v. Feldman, 6 N.T.S.B. 1000, 1989 WL 267659 at *1 & n.5 (Apr. 7, 1989); Administrator v. Ragland, 7 N.T.S.B. 1068, 1991 WL 321206 at *2 (July 16, 1991). Cooper found himself in difficulties under IFR conditions. He unilaterally declared an emergency. As in Ragland, Cooper thus placed his passengers in a situation he could not safely resolve without ATC intervention, thereby potentially endangering those passengers. Substantial evidence supports the Board's finding that Cooper violated § 91.13(a).

IV.

For the foregoing reasons, substantial evidence supports all of the Board's findings in this case. We therefore deny the petition for review.[6]

PETITION DENIED

_____

[6] We cannot let this case pass without offering this comment. At oral argument, Cooper's counsel informed us that Cooper is a "determined man." We were also informed, however, that Cooper's pilot certificate was, at that time, temporarily suspended for a medical condition. We do not fathom why Cooper did not drop this petition for review and accept his 60-day suspension while he could not fly for medical reasons anyway. We fail to see the logic of a determination that blinds one to one's best interests as well as one that needlessly wastes judicial resources over a slap on the wrist to boot.

8