**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 30, 2012

No. 11-60507

Lyle W. Cayce
Clerk

NEWTON R. DICKSON,

Petitioner

v.

FEDERAL AVIATION ADMINISTRATION,

Respondent

Petition for Review of an Order of the
Federal Aviation Administration
FAA No. 2072182

Before REAVLEY, HAYNES, and GRAVES, Circuit Judges.

PER CURIAM:[*]

On March 11, 2011, Newton R. Dickson, a pilot for Continental Airlines, submitted his application ("2011 application") to an Aviation Medical Examiner ("AME") for the Federal Aviation Administration ("FAA") seeking an unrestricted first-class medical certificate. Dickson also requested consideration for special issuance authorization of a first-class medical certificate ("Authorization"). After examining Dickson and reviewing the information in Dickson's agency medical file, the Federal Air Surgeon ("FAS") denied Dickson's

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-60507

application for an unrestricted first-class medical certificate and Authorization. Dickson now petitions this court for review of the FAA's denial of his application for Authorization.

## FACTS AND PROCEDURAL BACKGROUND

On April 8, 2004, while on a layover in London, England, Dickson suffered a seizure in a restaurant and was transported to the University College London Hospital.[1]  After undergoing a medical examination, Dickson was discharged from the hospital with a diagnosis of a "first witnessed generalized seizure." Dickson's supervisor, Captain Henry Craig, then made arrangements for Dickson to travel back to the United States and required him to be evaluated by an AME before he could resume his flight duties.  Dr. Stephen Grayson, an AME, examined Dickson and provided a letter clearing him for flight duties.

Approximately one month later, Dickson suffered a second seizure or "other disturbance of consciousness" during a multi-legged training and passenger-carrying flight.  *Dickson v. Nat'l Transp. Safety Bd.*, 639 F.3d 539, 541 (D.C. Cir. 2011).  During the second leg of the flight from Cleveland, Ohio to Las Vegas, Nevada, Captain Frank Metzner observed Dickson having difficulty with tasks he had previously performed on the initial leg of the flight. *Id.* at 541-542.  Captain Metzner noticed a deterioration in Dickson's level of awareness and ability to follow instructions.  Based on Dickson's general behavior, Captain Metzner was compelled to take control of the aircraft for the remainder of the flight to Las Vegas, Nevada.

After arriving in Las Vegas, Nevada, Captain Metzner instructed Dickson to prepare the aircraft for the final leg of the flight.  However, Captain Metzner observed that Dickson was unable to perform the basic procedures and routine

---

[1] It should be noted that University College London Hospital is world-renowned for its expertise in neurology.

2

No. 11-60507

cockpit preparations.  Prior to take off, Captain Metzner also observed that "[Dickson's] arm was shaking in a spastic shaking motion" when he reached for the overhead panel and that he was unable to load several sets of data.  Based on this behavior, Captain Metzner decided to fly the last leg of the flight to Houston, Texas.

Upon arrival in Houston, Texas, an Assistant Chief Pilot for Continental Airlines, Captain Small, entered the cockpit.  Dickson told Captain Small that he had no complaints about his training during the flight, but could not explain his inability to perform his flight duties.  Captain Small testified that "there was just a very removed, detached sense that everything was moving in slow motion, everything was disconnected" when speaking with Dickson.  Based on his investigation, Captain Small recommended that Dickson be evaluated by an AME.  On May 19, 2004, Dr. Grayson again examined Dickson and issued him a first-class medical certificate, clearing Dickson for flight duties.

Despite Dr. Grayson's examination, the Chief Pilot of Continental Airlines referred Dickson to Dr. Michael Berry for a medical evaluation.  After examining Dickson and reviewing hospital records from London, Dr. Berry concluded that Dickson suffered a loss of consciousness secondary to seizure, and that he was not qualified for flight duties.

On December 21, 2006, Dickson applied for an unrestricted first-class medical certificate ("2006 application").  Upon reviewing the information contained in Dickson's medical records, the FAS, Dr. Frederick E. Tilton, concluded that Dickson had "a history of disturbance of consciousness without satisfactory medical explanation."  Dr. Tilton concluded that Dickson's medical condition was "incompatible with aviation safety," and denied Dickson's request for a first-class medical certificate.  Dr. Tilton also considered Dickson's application for Authorization. Dr. Tilton determined, however, that "[Dickson's]

No. 11-60507

medical condition preclude[d] [him from] the safe performance of airman duties under any condition that could reasonably be prescribed."

Pursuant to 49 U.S.C. § 44703, Dickson appealed the denial of his application for an unrestricted first-class medical certificate. *See* 49 U.S.C. § 44703(d). On August 4, 2009, an Administrative Law Judge ("ALJ") for the National Transportation Safety Board ("NTSB" or "Board") held a hearing concerning Dickson's petition for review. On August 6, 2009, the ALJ found that Dickson "failed to meet his burden of proof to establish that the denial was not valid under the circumstances of this case." Aggrieved by the ALJ's decision, Dickson appealed to the full Board.

On April 9, 2010, the NTSB issued its opinion and order, denying Dickson's appeal, affirming the ALJ's decision and the FAA's denial of Dickson's application for an unrestricted first-class medical certificate. Pursuant to 49 U.S.C. § 1153, Dickson sought judicial review in the United States Court of Appeals for the District of Columbia. *Dickson*, 639 F.3d at 539-545.

On appeal, Dickson's sole contention was that the NTSB's opinion and order was not supported by substantial evidence. *Id.* at 542. Unpersuaded by Dickson's argument, the court denied Dickson's petition for review. *Id.* at 545. However, while the case was pending before the District of Columbia Circuit, Dickson applied for another unrestricted first-class medical certificate and requested renewed consideration for Authorization. Along with his 2011 application, Dickson provided "a small sampling of some of [his medical] data to date." Dr. Robert Sancetta, the AME who examined Dickson, noted that although the FAA had reviewed "most, if not all" of Dickson's medical data, it had not reviewed Dr. Andrew Lees's letter.[2] Based on the limited information

---

[2] Dr. Lees is a professor of neurology at the University College London Hospital, and was the attending physician in charge of the resident staff who cared for Dickson on the night of his first incident.

4

presented to him by Dickson, along with discussions he had with [Dickson], Dr. Sancetta recommended that Dickson's application for [Authorization] be reconsidered. Thereafter, Dr. Sancetta forwarded his findings, Dr. Lees's letter, and the information provided by Dickson to the FAS.

On May 23, 2011, the FAS issued a letter to Dickson denying his application for unrestricted first-class medical certificate and for Authorization. Pursuant to 49 U.S.C. § 46110,[3] Dickson now petitions this court for review of the FAA's denial of his application for Authorization.[4]

## STANDARD OF REVIEW

When reviewing an order of the FAA, the Courts of Appeals will apply the standard of review articulated in the Federal Aviation Act. 49 U.S.C. § 46110(c). The standards articulated in the Administrative Procedure Act ("APA") apply only where the Federal Aviation Act does not provide the appropriate standard. *Flamingo Exp., Inc. v. F.A.A.*, 536 F.3d 561 (6th Cir. 2008).

When reviewing the FAA's denial of an airman's application for Authorization, we will deem the FAA's factual findings "conclusive" if supported

---

[3] 49 U.S.C § 46110 states:

a person disclosing a substantial interest in an order issued by the Secretary of Transportation (or the Under Secretary of Transportation for Security with respect to security duties and powers designated to be carried out by the Under Secretary or the Administrator of the Federal Aviation Administration with respect to aviation duties and powers designated to be carried out by the Administrator) in whole or in part under this part, part B, or subsection (l) or (s) of section 114 may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business.

49 U.S.C. § 46110(a).

[4] Dickson does not challenge the FAS's denial of his application for an unrestricted first-class medical certificate.

No. 11-60507

by "substantial evidence." 49 U.S.C. § 46110(c). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004). Under the Administrative Procedures Act ("APA"), a decision of the FAA must be set aside or reversed only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *City of Abilene v. United States E.P.A.*, 325 F.3d 657 (5th Cir. 2003). Indeed, once the factual findings are determined to be supported by substantial evidence, we "must accept also the conclusions drawn therefrom unless they are seen to be arbitrary or capricious, or to rest on premises that are deemed contrary to ascertainable legislative intent or are otherwise contrary to law." *Cooper v. Hinson*, 109 F.3d 997, 1000 (4th Cir. 1997) (quoting *Western Air Lines, Inc. v. Civil Aeronautics Bd.*, 495 F.2d 145, 152 (D.C. Cir. 1974).

## DISCUSSION

*I.    Whether the FAA's decision to deny Dickson's 2011 application for Authorization was supported by substantial evidence.*

In this case, Dickson contends that the FAA's decision denying his application for Authorization should be reversed because it was not supported by substantial evidence. Dickson argues that the FAS's decision was not, and could not be, supported by substantial evidence because there was no evidence of his current medical condition in the agency record. While Dickson recognizes that the decision to grant an Authorization is well within the discretion of the FAS, he asserts that the FAS must consider any medical facts that may affect his ability to perform his flight duties in making its decision. Because the agency record is devoid of any evidence concerning his current medical condition, Dickson argues, we should reverse and remand to the FAA with

instructions to develop an adequate agency record concerning his current medical condition.

The FAA argues, however, that when denying an airman's application for Authorization there is no requirement that the FAA ignore the airman's disqualifying medical history and only consider the airman's current medical condition. In support of Dickson's 2011 application, the FAA points out that he had submitted additional records for the FAS to consider, including a letter from Dr. Sancetta, who examined Dickson at the time of his 2011 application and a letter from Dr. Lees, the attending physician in charge of the resident staff who cared for Dickson on the night of his London incident. Following FAA procedure, Dr. Sancetta forwarded Dickson's 2011 application and the additional documents to the FAS for a final decision. Based on the information submitted by Dickson and his medical history, the FAA argues that its denial of Authorization is clearly supported by substantial evidence. We agree.

Because Dickson does not meet the requirements to be eligible for an unrestricted first-class medical certificate, he "may apply for the discretionary issuance of a certificate under [14 C.F.R.] § 67.401." 14 C.F.R. § 67.115. According to 14 C.F.R. § 67.401, upon application by the airman, and at the discretion of the FAS, an Authorization:

> may be granted to a person who does not meet the provisions of subparts B, C, or D of this part if the person shows to the satisfaction of the [FAS] that the duties authorized by the class of medical certificate applied for can be performed without endangering public safety during the period in which the Authorization would be in force.

14 C.F.R. § 67.401(a). In making its determination, the FAS "may consider the person's operational experience and any medical facts that may affect the ability of the person to perform airman duties including . . . the prognosis derived from professional consideration of all available information regarding

the person." 14 C.F.R. § 67.401(c)(2). Nevertheless, the applicant bears the burden of proving, to the satisfaction of the FAS, "that the duties authorized by the class of medical certificate applied for can be performed without endangering public safety . . . ." 14 C.F.R. § 67.401(a).

Dickson's argument, however, fails for a number of reasons. First, Dickson bears the burden of proving that his current medical condition qualifies him for an Authorization. Yet, Dickson fails to point to any current medical information provided by him that the FAS did not consider. In fact, a majority of the additional information Dickson provided to Dr. Sancetta had been previously reviewed by the FAA. *See Dickson*, 639 F.3d at 539-41.

Secondly, as Dr. Sancetta noted in his letter to the FAS, "I administered a first[-]class exam to [Dickson] today." Thereafter, Dr. Sancetta forwarded his report and letter, Dr. Lees's report, and additional supportive data to the FAS for "reconsideration for [Authorization]." Contrary to Dickson's claim – that the record is devoid of his current medical condition – it seems clear that the FAS possessed sufficient, current medical information regarding Dickson's current medical condition (*i.e.* Dr. Sancetta's March 11, 2011, examination).

Third, although Dickson claims that "the FAA *must* consider any medical facts that may affect [his] ability to perform [his flight] duties, he fails to provide any citation to support this contention. In fact, the controlling regulation clearly states otherwise: "[i]n granting an Authorization . . . the [FAS] *may* consider . . . any medical facts that may affect the ability of the person to perform airman duties . . . ." 14 C.F.R. § 67.401(c) (emphasis added). Furthermore, there is nothing in the record to suggest that the FAS did not consider Dr. Sancetta's March 11, 2011, report and letter concerning his examination of Dickson.

No. 11-60507

Finally, Dickson claims that the FAS's decision should be based upon his current medical condition, rather than his medical history. However, Dickson fails to provide any support for this conclusion. In fact, there is no regulation which requires that the FAS's decision to grant or deny an airman's application must be based solely upon the airman's current medical condition.

Moreover, a majority of the additional information that Dickson submitted along with his 2011 application had previously been considered by the FAS when it decided to deny Dickson's 2006 application, which was affirmed by the District of Columbia Circuit Court of Appeals. The only information that had not been considered in the 2006 application was Dr. Sancetta's report and letter, and Dr. Lees's letter, and there is nothing to suggest that this information was not considered in his 2011 application. Based on the medical information presented, the FAS's denial of Dickson's application for Authorization was supported by substantial evidence.

II.   *Whether the FAA departed from its established agency orders, policies, and procedures in denying Dickson's application for Authorization.*

Here, Dickson claims that "the FAS ignored the FAA's established procedures for evaluating a special issuance medical certificate" pursuant to: (1) FAA Order ND 8500.1D, (2) FAA Order 8520.2G, and (3) the FAA's Guide for Aviation Medical Examiners. Dickson also argues that the FAA established, by its September 2007 letter to Dickson, a policy requiring the FAA to request additional information before making its decision regarding an airman's application for Authorization and that the FAA failed to follow this established policy.

Because the Federal Aviation Act does not specify a standard of review for this claim, we defer to the APA's standard of review: a decision of the FAA must be set aside or reversed only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

9

No. 11-60507

Dickson concedes that the FAA's decision to deny his application for Authorization "was within the scope of its lawful authority under 14 C.F.R. § 67.401." However, Dickson argues that the process by which the FAA reached its decision was "neither logical nor rational[,]" and therefore was arbitrary, capricious, and an abuse of discretion.

A.    *FAA Order ND 8500.1D – Airman Medical Certification*

According to Dickson, the FAA failed to follow FAA Order ND 8500.1D because it did not consider his current medical condition in denying his 2011 application. FAA Order ND 8500.1D provides, in part:

> At the discretion of the FAS, in accordance with § 67.401, an Authorization may be granted to an airman who does not meet the medical certification provisions of part 67. Authorization of a medical certificate is granted when the FAS determines based upon a review of the information presented by the airman that the duties authorized by the class of medical certificate applied for can be performed without endangering the public safety during the period in which the Authorization will be in force.

FAA Order ND 8500.1D, at *5 ¶12(a). Interestingly, while FAA Order ND 8500.1D clearly provides that Authorization will be granted "based upon a review of information presented by the airman," Dickson argues:

> the FAS failed to follow FAA Order ND 8500.1D because his determination to deny Mr. Dickson's Authorization was not based upon a review of the information presented by the airman concerning his current medical condition. *In fact, no evidence of Mr. Dickson's current medical condition was presented by the airman or otherwise appears in the agency record.*

According to Dickson, the FAS arbitrarily and capriciously disregarded its own procedure by not considering evidence that Dickson was required to provide but failed to do so by his own admission. However, Dickson's interpretation of FAA Order ND 8500.1D is flawed. Clearly, the policy requires Dickson to present information he believes will demonstrate that he can

10

perform the duties of an airman without endangering public safety. Because he admittedly failed to do so, his argument is without merit.

    B.    *FAA Order 8520.2G and FAA's Guide for Aviation Medical Examiners*

Under FAA Order 8520.2G, an AME is delegated the authority to defer medical certification decision to the FAA . . . if deferral is recommended by agency policy or the *Guide for Aviation Medical Examiners*." FAA Order 8520.2G; *see also* Guide for Aviation Medical Examiners, Decision Considerations – Aerospace Medical Dispositions (2011) (when diagnosis is "disturbance of consciousness without satisfactory medical explanation of the cause," AME must defer for FAA decision). The *Guide for Aviation Medical Examiners* further requires the AME to "submit all pertinent medical records, current neurological report, to include name and dosage of medication(s) and side effects."

Here, Dickson contends that although Dr. Sancetta correctly deferred the medical certification decision to the FAA, "Dr. Sancetta never had the opportunity to submit all pertinent medical records or a current neurologic report prior to the FAA's denial of Dickson's Authorization." As a result, Dickson argues, the FAS never reviewed or considered the necessary medical data before denying his application for Authorization. Dickson further claims that the agency record fails to provide any evidence to suggest that the FAA reviewed his current medical condition while considering his application for Authorization. "In fact, there is absolutely no indication in the record to establish that the FAS considered Mr. Dickson's application for an Authorization under 14 C.F.R. § 67.401, or otherwise reviewed his current medical condition in order to determine eligibility as required by FAA Order ND 8500.1D." Therefore, Dickson concludes that the FAA's denial of his application

No. 11-60507

for Authorization was arbitrary and capricious because the FAA disregarded the *Guide for Aviation Medical Examiners.*

Contrary to Dickson's argument, and as noted above, the record does contain evidence of his current medical condition. Dr. Sancetta noted that he examined Dickson on March 11, 2011, and information provided by Dickson regarding his medical history. Thereafter, Dr. Sancetta forwarded all the medical information to the FAS that Dickson had provided, including his letter recommending reconsideration for Authorization and Dr. Lees's letter from London that had not been previously considered. The FAS received the information provided by Dr. Sancetta and a case file was opened. Thus, the record plainly indicates that evidence of Dickson's current medical condition was reviewed by the FAA prior to its final determination.

## C.    *Prior Established Procedures*

Here, Dickson claims that "the FAA failed to follow its own policies and procedures that were previously established in September 2007, when the agency first considered" Dickson's eligibility for Authorization. Essentially, Dickson asserts that the FAA's September 2007 letter to Dickson requesting additional current medical information before determining his eligibility for Authorization established a FAA policy or procedure that it failed to follow in the present case.

Initially, we note that Dickson offers no support for this proposition. Dickson merely relies on his conclusory assertion that the FAA's 2007 letter requesting additional information established a legitimate policy that required the FAA to request current medical information in every case before making a decision regarding Authorization by sending Dickson a letter.

According to the FAA's general rulemaking procedures:

> The FAA uses APA rulemaking procedures to adopt, amend, or repeal regulations. To propose or adopt a new regulation, or to

No. 11-60507

change a current regulation, FAA will issue one or more of the following documents. We publish these rulemaking documents in the Federal Register unless we name and personally serve a copy of a rule on every person subject to it. We also make all documents available to the public by posting them in the Federal Docket Management System at http://www.regulations.gov.

(1) An advance notice of proposed rulemaking (ANPRM).
(2) A notice of proposed rulemaking (NPRM).
(3) A supplemental notice of proposed rulemaking (SNPRM).
(4) A final rule.
(5) A final rule with request for comments.
(6) A direct final rule.

14 C.F.R. § 11.25 (a) (2007). Because nothing in the FAA regulations suggests that the contents of a letter addressed to an airman regarding his application for Authorization constitutes an established policy or procedure, Dickson's argument lacks merit.

In its entirety, Dickson's argument on appeal relies on his assertion that the FAA erred in denying his application for Authorization because it was not based on his current medical condition. The fact remains, however, that neither the Federal Aviation Act nor the APA requires the FAA to consider only an airman's current medical condition in determining his eligibility for Authorization. Therefore, Dickson's petition for review is DENIED.

## CONCLUSION

For the forgoing reasons, Dickson's petition for review is DENIED.